JAMES HAUSER, BY HIS NEXT FRIEND, SALLIE HAUSER, v. THE FORSYTH FURNITURE COMPANY.

(Filed 7 November, 1917.)

**Master and Servant—Contributory Negligence—Factories—Children—Statute—Presumptions.**

In favor of an employee, not an apprentice, at defendant's factory, under the age of 13 years, contrary to the provisions of the statute (Pell's Revisal, sec. 1981b), and injured through its negligence, there is a *prima facie* presumption that he was not guilty of contributory negligence, and in such case it is the duty of the trial judge to instruct the jury that in determining the issue the evidence should be considered and passed upon in reference to that presumption, and a charge which fails to recognize such presumption, or ignores it and instructs the jury on the issue according to the principles of law ordinarily applied to cases of adults, is reversible error.

CIVIL ACTION, tried before *Adams, J.,* and a jury, at September Term, 1916, of FORSYTH.

The action was to recover damages for physical injuries suffered by plaintiff, a minor, when in the company's factory as an employee, contrary to the provisions of the statute (Pell's Revisal, sec. 1981b), and attributed also to positive negligence on the part of defendant.

On denial of liability and plea of contributory negligence, the jury rendered the following verdict:

1. Was the plaintiff, at the time of his alleged injury, under 13 years of age, as alleged in the complaint? Answer: Yes.

2. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: Yes.

3. Did the plaintiff, by his own negligence, contribute to his injury, as alleged in the answer? Answer: Yes.

4. What damage, if any, is the plaintiff entitled to recover? Answer: Nothing.

Judgment on the verdict for plaintiff, and defendant appealed, assigning for error the charge of his Honor on the question of contributory negligence, as follows:

"If you find from the evidence that the plaintiff was forbidden by Dorse, as the servant of defendant, to swing from the safety-rod on the elevator, and that he intentionally or knowingly disobeyed the order and attempted to catch hold of the safety-rod while the elevator was in motion, and fell, and was thereby injured, you will find that the plaintiff was negligent. And if you further find that he would not have been injured if he had not disobeyed the instructions, then, nothing else appearing, his disobedience of orders would be deemed to be the proximate cause of his injury, and in that event you would answer the third issue 'Yes.' "

*J. C. Wallace and Hastings, Stephenson & Whicker for plaintiff.*
*Manly, Hendren & Womble for defendant.*

HOKE, J. It was admitted on the hearing that the plaintiff, at the time he was injured, was not serving in the capacity of apprentice, and this being true, it is established by the verdict that plaintiff has been injured by the negligence of defendant company when he was at their factory as an employee, contrary to the provisions of our statute law (Pell's Revisal, sec. 1981b), and that recovery has been denied on the ground of contributory negligence.

It is recognized with us that the defense of contributory negligence, in proper instances, may be available in these cases, but it is also clearly held that the presumption is against it, and that where a minor is

injured when serving as an employee contrary to the provisions of the statute, the court should instruct the jury, in this or some equivalent terms, that the evidence should be considered and the issue determined in view of such presumption. *Pettit v. R. R.,* 156 N. C., 119-127; *Leathers v. Tobacco Co.,* 144 N. C., 330; *Rolin v. Tobacco Co.,* 141 N. C., 300.

In *Leathers' case, supra,* it was directly held: "That, under the age prohibited by the statute, the presumption is that the child injured while working in a factory or manufacturing establishment is incapable of contributory negligence, subject to be overcome by evidence in rebuttal under proper instructions from the court." And in *Rolin's case,* on this subject: "A child under 12 years of age is presumed to be incapable of so understanding and appreciating dangers from the negligent act, or conditions produced by others, as to make him guilty of contributory negligence. Contributory negligence on the part of a child is to be measured by his age and his ability to discern and appreciate the circumstances of danger. He is not chargeable with the same degree of care as an experienced adult, but is only required to exercise such prudence as one of his age may be expected to possess; and this is usually, if not always, when the child is not wholly irresponsible, a question of fact for the jury."

And in the case of *Pettit v. R. R., supra, Associate Justice Allen* gives a full and careful synopsis of several decisions of the Court on the subject, including *Starnes v. Mfg. Co.,* 147 N. C., 563, and others, and closes with the statement relevant to this question: "That in addition to the usual presumption against contributory negligence, there is a presumption that the child has not the capacity to appreciate the danger of his employment, but this presumption may be rebutted."

From a perusal of these decisions it will appear that a presumption against contributory negligence in cases of this character is recognized with us as an essential feature of the doctrine of contributory negligence, and a charge, therefore, which fails to make any reference to it, but instructs the jury just as in cases of adults, should be held for reversible error.

It is not a mere omission in reference to a "subordinate feature of the cause, or some particular phase of the testimony," but is to be considered as a "substantial defect," which may be raised by an exception properly entered and requiring that the issue be submitted to another jury.

The general position applicable has been stated in the recent case of *S. v. Merrick,* 171 N. C., 788-795, as follows: "And, further, the authorities are as one in holding that, both in criminal and civil causes, a judge in his charge to the jury should present every substantial and essential feature of the case embraced within the issue and arising on the evi-

30—174

HAUSER v. FURNITURE CO.

dence, and this without any special prayer for instructions to that effect. Charged with the duty of seeing that impartial right is administered, it is a requirement naturally incident to the great office he holds, and made imperative with us by statute law. Revisal, 535: 'He shall state in a plain and correct manner the evidence in the case, and explain the law arising thereon,' and a failure to do so, when properly presented, shall be held for error. When a judge has done this, charged generally on the essential features of the case, if a litigant desires that some subordinate feature of the cause or some particular phase of the testimony shall be more fully explained, he should call the attention of the court to it by prayers for instructions or other proper procedure; but, as stated, the judge is required to give correct charge concerning it," citing *S. v. Foster,* 130 N. C., 666; *S. v. Barham,* 82 Mo., 67; *Carleton v. State,* 43 Neb., 373; *Simmons v. Davenport,* 140 N. C., 407.

For the error indicated, the plaintiff is entitled to a new trial, and it is so ordered.

New trial.

CLARK, C. J., concurring in result: Laws 1907, chap. 463; Pell's Revisal, 1981b, raised the age within which a child cannot be employed in a factory by providing that between the age of 12 and 13 no child can be employed in a factory, except when an apprentice, "and only then after having attended school four months in the preceding twelve months." In this case it was admitted that the child injured was not serving in the capacity of an apprentice, and the verdict determines that he was under the age of 13, and that he was injured by the negligence of the defendant. Upon this verdict and admission, I think that judgment should be entered upon the verdict, but for the fact that no damages were assessed, and that the case should go back upon the issue as to the *quantum* of damages only.

The same chapter '(463, Laws 1907, secs. 3 and 5; Pell's Revisal, 3362) makes any mill owner, superintendent, or manufacturing establishment which "shall knowingly and willfully violate" the law in regard to working children under the age limited by the statute "guilty of a misdemeanor, and upon conviction he shall be punished at the discretion of the court." As the offense committed here by the defendant is a crime, under the laws of the State, it would seem clear, beyond all controversy, that contributory negligence can be no defense, and that the defendant is liable for any damage caused to one in his employment when such employment is indictable.

I concur that it was error, in any aspect, to submit the case to the jury upon the defense of contributory negligence, in the same terms as if the party injured were of the age of legal discretion and were legally in

the employment of the defendant. To do this virtually repeals the statute which makes such employment a crime by putting those of adequate age and those within the prohibited age upon the same basis.

But the law goes further. The defendant was committing a crime when he exposed the plaintiff within the prohibited age to the danger whereby he was injured. It is not, therefore, a matter of contributory negligence, nor even of negligence on the part of the defendant. There can be logically and justly but one inquiry, and that is the amount of damage sustained by the child when thus exposed by the defendant to injury in violation of the penal law.

It is very hard to get away from the influences of the common law under which women and children had no rights which the stronger were compelled to respect. The "common law" was the general law of England, as distinguished from countless local customs, and was simply and necessarily "judge-made" law, formulated in a rude and barbarous age. There were no lawyers in England till 1291 (Ridge's Cons. Law of Eng., 245), and down to the Protestant Reformation under Henry VIII the judges, with the exception of a few laymen, were usually ecclesiastics, who were, of course, Catholic priests, for there were no other clergy. Maitland & Montague, Eng. Legal History (Colby Ed.), p. 97. Bracton and almost all the other law writers of the formative period of the common law were in church orders, and the lord chancellors were bishops or archbishops (with the exception of one woman, Eleanor of Provence), almost without a break till the Reformation. The first lord chancellor who was appointed from the outside, Sir Robert Bourchier, in 1341, was a soldier and not a lawyer.

The Catholic Church, which had begun some centuries before to require celibacy to some extent of its clergy, made this an absolute requirement by order of Pope Gregory VII (Hildebrand), in 1075, shortly after the Norman Conquest, and it could hardly be expected that the common law, which so largely was created by unmarried priests (the judges of England), should have woven into it an adequate consideration of the rights of women and children. Indeed, it is not too much to say that all social progress has been by modification or repeal of the judge-made "common law" of those centuries.

In Chaucer's Canterbury Tales, the "Clerke's Tale" (*i. e.,* the priest) narrates the story of the "Patient Griselda," who for ages has been the model wife, in the view of those who believe in the unrestricted supremacy of man and the utter subjection and effacement of women and children. When she was told by her husband that he would take the life of their only son, without demur she patiently replied:

> "Ye ben my lord; do with your owen thing,
> Right as you list, asking no rede of me. . . .
> Wherefore I you pray, Do your pleasaunce."

This was written in the last quarter of the fourteenth century, and to some extent may have expressed the views of the priest-judges who were then making the common law of England. This was certainly the law of Rome in its earlier and ruder days. After the Protestant Reformation, when the judges were usually lawyers, they were largely governed by precedent, as now, and, the dominant class in England being the employing class, the employed had slight recognition in the law.

In that excellent book, "A Century of Law Reform," it is pointed out that for a long time the wages of labor were prescribed by the law made by the nobility and other landowners, and it was a hanging offense for an employee to exact more than the prescribed wages, or to unite with his fellows to request an increase of pay. A labor union, until very recent years, was a conspiracy, under the laws of England.

We cannot go back to the ideas formulated by such judges, and even by the parliaments of those days, to interpret a statute made in a free country in the twentieth century, under which it is an indictable offense to employ a child under the specified age, which would rob him of the birthright of youth and expose him to dangers which are, in law, beyond his years to comprehend.

When a child is thus employed contrary to an act which makes it an indictable offense, it is a misinterpretation of the law to say that he can be guilty of contributory negligence. Indeed, it is not essential to show that the employer has been guilty of negligence. The fact that, knowingly and in violation of law, he is illegally exploiting the child, makes the employer as to that employment a criminal (Revisal, 3362), and he is liable civilly for all injury that may come to the child in the course of his employment while thus illegally employed. Nay, more: if the child is killed, the employer is not only liable for damages, but for manslaughter, one form of which is defined to be, "If one unintentionally kills another, without malice, in doing an unlawful act not amounting to felony nor naturally dangerous to life." 21 Cyc., 761; *S. v. Hall,* 132 N. C., 1094. If the act was known to the defendant to be likely to cause death or serious bodily harm, although no deadly weapon is used, such unintentional killing is murder; or if the act is done while engaged in the commission of some other felony, it is murder. 21 Cyc., 761, and cases there cited.

The statutes of today are the formulated legal expression of the will of the people of this day and generation, and they must be construed in that light, and not according to the views of the priests and other judges, whether laymen or lawyers, whose decisions created the "common law" under which women, children, and laborers were alike submerged.

Under our statute it was indictable for this defendant to employ this child. The child was injured in that employment. The defendant can-

not defend himself from liability upon the ground that the child contributed to his own injury. It was to prevent giving the child the oportunity to contribute to his own injury, and to forbid the employer opportunity, by his negligence, to injure the child, that the statute was enacted. If this were not so, the statute is useless and does not express the motive and cause of its enactment.

The world moves on to a higher plane, and the law must move with it to a juster and a clearer regard of the rights of those who have so long needed its protection and have asked it in vain.