## FALL TERM, 1950

## JOHN P. METCALF v. DEWEY A. FOISTER.

(Filed 20 September, 1950.)

**1. Trial § 31b—**

Where, in stating the evidence and explaining the law arising thereon, the court deals with all substantial and essential features of the evidence, an objection thereto on ground that the charge failed to comply with G.S. 1-180 cannot be sustained, it being the duty of the objecting party if he desired some subordinate feature to have been presented to the jury to have aptly tendered request for special instructions thereon.

**2. Automobiles §§ 16, 18i—**

Where plaintiff's evidence discloses that he was standing in an open area used for parking, and not within any marked cross-walk located therein, he is not entitled to instructions as to the right of way of a pedestrian upon entering an intersection or marked cross-walk between intersections.

**3. Same—**

An open space in a square used for parking is not an intersection within the contemplation of statutes relative to the right of way of pedestrians.

**4. Appeal and Error § 39b—**

Where the jury answers the issue of negligence in the negative, plaintiff's exceptions to the charge relating to the issue of contributory negligence need not be considered.

355

**5. Appeal and Error § 39f—**

    Where the charge, read contextually, does not contain prejudicial error, mere inexactness in certain portions thereof will not justify a new trial.

PLAINTIFF's appeal from *Pless, J.,* Regular January 1950 Term of BUNCOMBE Superior Court.

This is an action to recover damages for a personal injury to plaintiff allegedly caused by the negligent operation of an automobile driven by defendant. It is alleged that a collision and injury occurred while plaintiff, a pedestrian, was attempting to negotiate his passage along the east side of Pack Square, in the City of Asheville, on his way home, by the usual route, after work in the late afternoon or evening.

The plaintiff testified, in substance, that he left his work on Biltmore Avenue about 5 :40 p.m., on his way to supper at his home on Broadway, his route passing through Pack Square. Broadway leads off from the Square in a northward direction. He approached the Square on Biltmore Avenue from the south, intending to go to the "information booth" which stands near the monument in the middle of the square, and in front of it. (He then gave a description of Pack Square and the curbing surrounding it, using for illustration a blackboard drawing. No maps accompany the record.) There is a curb running around Pack Square. The sidewalk on Biltmore Avenue approaching the Square was not directly in line with the sidewalk on the opposite side of the Square, that on Biltmore Avenue being offset substantially to the eastward.

There were cars parked in a regular parking place on the eastern side of the Square. Witness was not sure whether there were white lines leading off the place, but knew the places were full of cars, parked headed eastwardly.

Plaintiff testified that he went up Biltmore Avenue to the curb. Seeing one of the lights on the Square was red, and the light on Biltmore Avenue was green, he walked out a distance on the Square, and stopped at about the third tier of parked cars, and immediately behind one of them, and waited until two or three automobiles came around. While he was still watching the light, and it was still green—standing and looking at it,—the defendant "drove up and turned in here and hit me." The bumper of the car struck his leg just below the knee, hitting plaintiff from the side or rear and knocking him down; defendant stopped when he hit plaintiff. At the time it was raining and very near dark. Plaintiff testified that Mr. Foister came to him, and plaintiff said, "Now, what did you hit me for? I was just standing still there." Foister replied, "I could not see you." "He said it was raining so hard and it was so dark he couldn't see through his windshield. I said, 'Well, don't your windshield wipers work?' and he said, 'No.'" Foister then carried him in his car to the restaurant where he worked.

On cross-examination plaintiff testified that there is a cross-walk for pedestrians going across the Square, painted on the street; another cross-walk in front of a drug store, one across Patton Avenue, and another on College Street.

When plaintiff turned from Biltmore Avenue he "turned to the right just a little piece at this corner to get back of those cars; came up here and looked at the light. It was red. Started to go across. Got about between the third and fourth line up and stopped. The light went green. Cars started to go round."

"I was standing in the clear. He attempted to pull into this parking place and there was not a place open." "There was no lane there for traffic to follow. There was no lane where I started to cross. I think there was a mark for the cars to stand in. I think there was a lane for pedestrians to walk across. I don't say the pedestrian lane was right up against the back of these automobiles. I was not against the automobiles. I was behind them. There used to be a pedestrian lane running back of these automobiles along there. I believe I was standing in the lane. I did not know the matter would terminate in a law suit and I didn't take particular attention."

J. C. Chandley, police officer, testified for the plaintiff that he talked with Mr. Foister, who said that he entered Pack Square and made a right turn to the parking space; that his visibility was obscured just a little bit by rain on the windshield; that his windshield wipers were working; that he did not see Metcalf until he bumped into him.

He further testified that there was no mark from the Plaza Theatre corner over straight north to the Island where the monument is located. There was no pedestrian cross-walk there. "The closest marked pedestrian cross-walk to where this accident happened is over in front of B. F. Goodrich. That was marked at the time this accident happened. It is 120 feet from the North curb in front of the Plaza Theatre over to the Island where the monument is located. It is between 40 and 42 feet from the intersection of the curb at the East side of Biltmore Avenue and the North curb along by the Plaza Theatre, back to the curb where it turns north again. It is approximately 50 feet, in my opinion, from the North curb in front of the library to the safety zone, that is, the surface on which traffic travels, city buses, White Transportation buses. From the curb to the safety zone is an open space where traffic travels." "If you extended the sidewalk on the East side of Biltmore Avenue straight across Pack Square, it would be approximately 35 feet to the nearest point on the extended line over to approximately where the accident happened." "The sidewalk on Biltmore Avenue itself is approximately seven feet. If you extended this sidewalk straight across the

Square it would come away out here and not hit the curb. It would come out in the street 16 feet. The Square is that much wider."

Cecil Johnson testified for plaintiff to the effect that he arrived at the scene of the accident shortly after it occurred and that the defendant, Mr. Foister, said that he noticed a place to park just a little past the theatre and sarted to go into this place to park and hit Mr. Metcalf. That it was raining and that he did not know that he hit him; that his windshield wiper was not working; that it was raining and he didn't see him. Mr. Metcalf was working for this witness at the time, running the "Good Enough Place" for him. On cross-examination he denied that he heard Foister tell the officer that his windshield wiper was working; that he didn't hear very well but didn't misunderstand him about the windshield wiper down at the place where he was talking to Mr. Metcalf's son." "He stated that he was looking for a parking place and that he didn't know at the time that he hit Mr. Metcalf."

In his evidence, the defendant, Dewey Foister, testified that when he got to Pack Square he did not immediately see a parking space but was going along slowly and noticed a car starting to move out; that he backed up a little way so as to let this car out and leave it clear, and then started to pull back into the place where he had vacated; he was just crawling; his windshield wiper was operating at the time this happened; that it was drizzling rain; that just as he began to move into the parking lane he saw a body fall right in front of his headlights, and immediately stopped; he didn't feel any jar whatsoever, but stopped and got out and saw the plaintiff. When he got around he was getting up.

Mr. Metcalf and defendant got back into defendant's car and went down to the Good Enough Bar. Defendant testified that his windshield wiper was working. Mr. Metcalf got into Cecil Johnson's car and defendant followed on behind; that he went to Mission Hospital where on examination the attending doctor said he didn't find any fractures and told the plaintiff to go home and put hot poultices on his leg and take some aspirin. Defendant left. He never made any statement that his windshield wiper was not working; that he couldn't see through the window. On the contrary, when Mr. Chandley was making inquiries, he said to him, "Mr. Chandley, you are welcome to go right now and make an examination of my brakes, windshield wiper and everything and see that everything is in first class mechanical order."

On cross-examination the defendant stated that he had good eyesight; that there was nothing in the Square to obscure his vision; that the place was well lighted and that his vision was good. The only thing he could say that prevented his noticing plaintiff was that Mr. Metcalf was wearing a brown coat; that it was a kind of hazy day and that somewhat camouflaged the scene; otherwise he could not account for it. The de-

fendant stated the man was not knocked any distance, was getting up when he got out, and that he couldn't have been more than a foot away from the bumper. He stated that he wasn't expecting to find any pedestrian there.

On re-direct the defendant stated that when he crept into the parking space there was nothing there; there wasn't anybody there when he started in. His wheels were pretty near opposite the white lines marking the parking space.

Oscar Young, testifying for the defendant, stated that on that day just after the accident he rode in the car with Mr. Foister; that Mr. Foister's windshield wiper was working perfectly.

Expert testimony was offered on each side, some experts attributing plaintiff's present condition of phlebitis to the injury sustained at the time of the accident, and others stating that it had no relation to it.

Three issues were submitted to the jury, relating: First, to the alleged negligence of the defendant; second, to the contributory negligence of the plaintiff; and third, to damages.

The jury having answered the first issue, "No," judgment against the plaintiff was entered accordingly, and plaintiff appealed, assigning error. (Exceptions discussed are given in the opinion.)

*Harkins, Van Winkle, Walton & Buck by Kester Walton for plaintiff, appellant.*
*Thomas A. Uzzell, Jr., and Harry DuMont for defendant, appellee.*

SEAWELL, J. Since we do not find merit in exceptions not herein mentioned, we confine discussion to those most stressed by counsel for the appellant, which involve the contention that the trial court failed to explain the law arising on the evidence as required by G.S. 1-180. The 1949 amendment to this section, relieving the trial judge of the necessity of restating the evidence except as necessary to the performance of this duty is not, at least directly, involved.

The exceptions designed to present appellant's contention in this regard, as pointed out in his brief, are numbered in assignments of error as 4, 5, and 8, and consist of bracketed portions of the judge's charge reading as follows:

Exception No. 4.

"(C) The plaintiff in this case, Gentlemen of the Jury, invokes the alleged violation by the defendant of statute which provides that an automobile shall be equipped with an efficiently working windshield wiper and also invokes the alleged violation by the defendant of the rule or law which says in effect that pedestrians shall have the right of way, so to speak, in pedestrian lanes when the traffic light is

with them. He also invokes the alleged violation by the defendant of his failure to observe the rule of the reasonably prudent man and to keep a lookout in the direction that he is traveling, to see those things that are there for him to see, and to operate his car in consideration and in conformity with the conditions of traffic in the place that he is. (D)."

The assignment of error is as follows:

"The Court erred in the above charge for that the Court referred to certain statutes but erroneously stated the provisions of said statutes, and *for the further reason that the Court failed to charge the duty of the defendant to the plaintiff, as provided for in G.S. 20-172 through 20-174, and other applicable provisions of the statute.*" (Italics ours.)

Exception No. 5:

"(E) If you answer both these features in favor of the plaintiff you have got actionable negligence established, but a finding that he did not have windshield wipers working at that time without a further finding that that was the cause of injury to the plaintiff, as I have defined that to you, would mean that actionable negligence had not been established upon that theory of the case. And, of course, as I say, the plaintiff is invoking these other matters that I have referred to as constituting negligence on the part of the defendant. So you will inquire whether or not the defendant was negligent in any one of the aspects referred to in the evidence and in the Court's charge a moment ago, and if you fail to find, remembering that the burden is upon the plaintiff in this issue, to establish by the greater weight of the evidence that the defendant was negligent, I say if you fail to find that he was negligent in one of those respects, then, of course, the plaintiff could not prevail. (F)"

The assignment of error in this part of the charge is as follows:

"Plaintiff excepts and assigns error to that part of the charge above quoted for that the Court failed to apply to the various aspects of the evidence the principles of law of negligence as prescribed by statute."

The exception referred to in assignment of error No. 8 ("K to L") has no relation to the contention under discussion and is, therefore, not copied.

It will be noted that the appellant attempts to raise the question of failure to comply with G.S. 1-180 by specific exceptions to certain por-

tions of the charge as containing error, with the incidental statement in each connection that the court should have charged *so* and so, but failed to do so. Not conceding or holding that such vital exception to the charge could be raised by this indirection, we may suppose for the purpose of discussion that the exceptions were validly made, with specific reference to the evidence involved and the explanatory law which it is contended the court failed to give. Supposing this, there are, however, two observations to be made, which taken together, we think, deprive the objection of its validity.

First, a perusal of the whole charge leaves us with the impression that the court adequately dealt with the evidence and applicable law as far as substantial clarification requires, although perhaps not precisely in the manner the plaintiff desired; sufficiently, however, to make any further detail a matter of subordinate elaboration, requiring on the part of the plaintiff a request for special instruction, which was not given. *Whiteman v. Transportation Co.*, 231 N.C. 701.

Pertinent to this discussion we find in McIntosh, North Carolina Practice and Procedure, Chapter 14, p. 626, the following:

> ". . . the judge is not required to instruct the jury upon every possible aspect of the evidence, or as to every conceivable inference of fact which might be drawn from it, he should prevent every substantial and essential feature embraced within the issues and arising upon the evidence; and when this has been done, if the parties desire some subordinate feature to be presented, or a fuller statement, they should ask for such special instructions."

*Grant v. Bartlett,* 230 N.C. 658; *Dulin v. Henderson-Gilmer Co.,* 192 N.C. 638, 135 S.E. 614, 49 A.L.R. 663; *Murphy v. Suncrest Lumber Co.,* 186 N.C. 746, 120 S.E. 342; *Ledford v. Valley River Lumber Co.,* 183 N.C. 614, 112 S.E. 421; *Hill v. North Carolina R. Co.,* 180 N.C. 490, 105 S.E. 184; *Hauser v. Forsyth Furniture Co.,* 174 N.C. 463, 93 S.E. 961; *Cherry v. Atlantic Coast Line R. Co.,* 186 N.C. 263, 119 S.E. 361; *Matthews v. Myatt,* 172 N.C. 230, 90 S.E. 150; *S. v. Merrick,* 171 N.C. 788, 88 S.E. 501; *McCracken v. Smathers,* 119 N.C. 617, 26 S.E. 157; *Oates v. Herrin,* 197 N.C. 171, 148 S.E. 30; *S. v. Hendricks,* 207 N.C. 873, 178 S.E. 557.

It will be noticed that the objections discussed tend to one common purpose: to invoke laws relating to the rights of the pedestrian upon entering an intersection or marked cross-walk between intersections of streets and highways, and that the cited statutes relate to that subject. Therefore, our second observation is that the plaintiff, in his own evidence, has definitely not placed himself within any position where these statutes might be invoked, or the general laws relating to the right of way

of the pedestrian under such circumstances might be available to the plaintiff.

An open space such as Pack Square is of itself hardly an intersection such as is contemplated by the statute sought to be invoked, and if it were the plaintiff has put himself without the pale of the protection of any marked cross-walk located therein, or other situation giving rise to the implications of the statute sought to be invoked.

We should say here that several of the instructions to which objections have been made and which are not here considered, are pertinent not to the issue of negligence, but that of contributory negligence, and that the jury did not reach that issue. We might observe also that there is some inexactness in the charge to the jury on the first issue. But taking the charge contextually we do not regard it as reversible error. No question but that there was ample evidence to sustain the finding for the plaintiff on the first issue had the jury been so minded, but we cannot find that the failure to do so is attributable to misdirection in the instructions given.

We do not find in the record sufficient reason to disturb the verdict.

No error.