STATE OF NORTH CAROLINA v. GEORGE SMITH ALSTON ALIAS GEORGE ALSTON, JR.

No. 41

(Filed 17 April 1978)

1. **Criminal Law § 128.2— inability of jury to agree—memorandum to trial judge —mistrial**

    A written memorandum from the jury to the trial judge that "due to lack of sufficient evidence, the jury cannot come to the agreement that this defendant . . . is in fact the man that committed these crimes" did not amount to an acquittal of defendant, and the trial judge properly withdrew a juror and declared a mistrial when the entire jury panel then unequivocally indicated to the judge that they were deadlocked and there was no possibility that they would ever be able to agree upon a verdict. Therefore, defendant was not placed in double jeopardy when he was thereafter placed on trial upon the same charges.

2. **Criminal Law § 57— testimony of ballistics expert**

    The trial court properly allowed a ballistics expert to give his opinion that a bullet taken from an assault victim's body was fired by a pistol taken from defendant and that the bullet could not have been fired from any other weapon.

3. **Criminal Law § 88.4— cross-examination of defendant—improper question— harmless error**

    In this prosecution for kidnapping, armed robbery and felonious assault in which the victim testified that at the time of the crimes defendant wore an unreadable name tag on his jacket, but the victim admitted on cross-examination that he testified at a previous trial that there was no name tag on defendant's jacket, and defendant testified that his jacket bore the name "Alston" and the name could be seen plainly, the defendant was not prejudiced by the district attorney's question as to whether he had "ever tried to read it

looking a .32 caliber pistol in the face," although the question was argumentative and not designed to elicit competent evidence.

**4. Criminal Law § 102.5— cross-examination of defendant—ability to recognize truth**

Where defendant admitted that he had given two conflicting statements under oath, the prosecutor inquired as to which should be believed, and defendant stated, "You believe which one you want," defendant was not prejudiced by the prosecutor's question as to whether defendant would know the truth if it stood right there in front of him, since defendant invited the prosecutor's question, and it served only to reflect defendant's admission that he had lied under oath.

**5. Criminal Law § 88.4— cross-examination of defendant—markings on fired bullet**

Where the State's evidence tended to show that a bullet taken from the victim's back was fired from a gun found in defendant's possession, and defendant testified that he had studied the makeup of guns in his Army training, the district attorney's questions to defendant concerning the markings which are made on bullets when fired from a gun were relevant and admissible to establish whether defendant possessed sufficient expertise to shed more light upon the relationship between the pistol found in his possession and the bullet taken from the victim's body.

**6. Criminal Law § 86.6— impeachment of defendant—statements in transcript of prior trial**

Where defendant testified that he had given certain testimony in a former trial, the district attorney was properly permitted to impeach defendant by asking him to point out such testimony in the transcript of the former trial.

**7. Kidnapping § 1.3— failure to give "substantiality" instructions**

The trial court did not err in failing to instruct the jury that kidnapping by unlawful confinement or unlawful restraint means confinement or restraint for a substantial period and that kidnapping by unlawfully moving one from one place to another means movement for a substantial distance.

**8. Kidnapping § 1.2— sufficiency of evidence**

The State's evidence was sufficient to support defendant's conviction for kidnapping where it tended to show that the victim was fraudulently caused to enter defendant's automobile by defendant's false promise to take him to a certain store, the victim was transported several miles, and defendant produced a pistol and forced the victim to walk fifty feet or more into the woods where he robbed and shot the victim.

**9. Criminal Law § 113.3— credibility of victim's identification testimony—failure to recapitulate—subordinate feature**

Where the trial court recapitulated defendant's evidence relating to the elements of the crime charged, to the identification of defendant as the perpetrator of the crimes, and to defendant's alibi defense, the court did not err in failing to recapitulate evidence pertaining to the weight or credibility of

State v. Alston

the victim's identification of defendant absent a specific request for instructions on this subordinate feature of the case.

10. **Criminal Law § 114.3— instructions—details not related to factual elements of charges—no expression of opinion**

The trial court in a kidnapping, armed robbery and felonious assault prosecution did not express an opinion in instructing the jury that certain details concerning the description of the automobile driven by defendant and the physical characteristics of defendant were not of themselves related to the factual elements of the charges and were not in issue in the case, since the obvious thrust of the instruction was to tell the jury that it should not be lost in a maze of details in their search for the answers to the ultimate question of defendant's guilt or innocence.

11. **Criminal Law § 114.3— instructions—details not related to factual elements of charges—no expression of opinion**

The trial court's instruction that the jury could and should consider whether or not any given witness had testified truthfully about details not related to the factual elements of the crimes charged and his recitation of examples of such details did not constitute an expression of opinion that the State's evidence was more essential to their deliberations than defendant's evidence since the trial court did not limit its recitation of such evidence to that presented by the State, and the court did not state or intimate that any of this evidence was essential to the jury's determination of defendant's guilt or innocence.

12. **Criminal Law § 122.2— coercion of verdict**

A trial judge has no right to coerce a verdict, and a charge which might reasonably be construed by a juror as requiring him to surrender his well-founded convictions or judgment to the views of the majority is erroneous.

13. **Criminal Law § 122.2— instruction urging jury to agree—surrender of own judgment**

If the trial judge urges a jury to agree upon a verdict, he should emphasize in language readily understood by a lay juror that he is not injecting his views into the minds of the jurors and that he does not intend that any juror should surrender his own free will and judgment.

14. **Criminal Law § 122.2— instructions urging verdict—appellate review**

In deciding whether the court's instructions forced a verdict or merely served as a catalyst for further deliberation, an appellate court must consider the circumstances under which the instructions were made and the probable impact of the instructions on the jury.

15. **Criminal Law § 122.2— instructions urging verdict before jury deliberations**

It is not reversible error for the trial court to give an instruction before the jury begins its deliberations urging the jury to agree.

**16. Criminal Law § 122.2— instructions on expense of another trial—no coercion of verdict**

   The trial court did not coerce a verdict by instructing the jury before it began its deliberations on the inconvenience and expense of another trial should the jury become deadlocked.

**17. Criminal Law § 122.2— instructions on duty of jury to deliberate—no coercion of verdict**

   The trial court did not coerce a verdict by instructing the jury before it began its deliberations (1) that an agreement would ease the tension within the jury and that disagreement would be "the first step toward deadlock," and (2) that the jury "should not talk endlessly nor go over and over again the same point, nor put up with any juror who wants to," where the impact of this portion of the charge, when read contextually and as a whole, was to warn the jury not to make a hasty decision without due deliberation and to instruct the jurors that in the course of such due deliberation they should be willing to exchange viewpoints openly but not endlessly discuss any given point; furthermore, any coercive effect of such instructions was dispelled by the court's instruction that, if after due deliberation, any juror sincerely believed that his decision was correct, he should "stick to it though (he) stand(s) alone."

APPEAL by defendant from *McLelland, J.*, 15 August 1977 Criminal Session, CUMBERLAND Superior Court.

Defendant was indicted and tried upon a bill of indictment which charged him with kidnapping, armed robbery, and assault with a deadly weapon with intent to kill inflicting serious injury. Prior to his arraignment, defendant entered a plea of former jeopardy which Judge McLelland denied. Upon arraignment, defendant entered a plea of not guilty to each charge.

At trial, the evidence offered by the State tended to show that shortly after noon on 30 December 1976, James R. DeLay, Jr., was walking home when defendant, whom he did not know at that time, stopped and offered him a ride. DeLay accepted and in the course of their conversation told defendant that he had to go to a certain store to get parts for his automobile. Defendant offered to take DeLay to the store in exchange for gas money. DeLay agreed and was first taken home where he changed clothes. Defendant then explained that he too wanted to go home to change clothes but instead drove to a wooded area off of Vass Road.

After stopping the car, defendant produced a pistol and forced DeLay to walk about 50 feet into the woods where he was

ordered to empty his pockets. Defendant then instructed DeLay to write a check for $250.00. The check was made payable to George Alston. DeLay was then ordered to walk in front of defendant and, after the two men had walked about 50 feet, defendant fired his pistol twice striking DeLay in the back with the second shot.

Thereafter, at DeLay's suggestion, the first check was torn up and another check was written for cash. The two men proceeded to a bank in Fayetteville where the check was cashed at a drive-in window. Defendant then released DeLay who immediately called the police. This entire series of events took place during a period of two to three hours.

Before going to the hospital, Delay attempted to retrace with the police the places where he and his assailant had been. He gave the police a description of his assailant as a black male, about 25 years old, about 6'1" tall, and weighing approximately 175 pounds. He also described the automobile as a white Monte Carlo or Grand Prix with a red Landau roof, white seats and some fur on the steering wheel. On 5 January 1977, DeLay identified defendant from a photographic lineup, and on 22 January 1977, he again identified defendant as his assailant after having seen him in a live lineup. At trial, DeLay twice made positive in-court identifications of defendant without objection by defense counsel.

The teller who cashed DeLay's check on 30 December 1976 picked defendant's picture from a group of six as the man who was with DeLay when the check was cashed. However, during her cross-examination at trial, she stated that she could not make a positive in-court identification of defendant.

Sergeant J. D. Gibson, U.S.A., testified that he was on duty as an MP on the night of 30 December 1976 when he received a bulletin concerning a kidnapping, armed robbery and attempted murder. The transmission described the suspect's vehicle as a late model Pontiac or Chevrolet, white with red pin-stripes. The suspect was described as male, approximately six feet tall, weighing 150 to 175 pounds. Gibson later saw defendant leave the N.C.O. Club and enter an automobile which fit the description given in the bulletin. He followed the car for some distance and finally stopped it. Defendant, who was driving, was accompanied

by three other people. Gibson "frisked" the occupants and placed defendant under arrest upon finding a pistol on his person.

Douglas Branch of the State Bureau of Investigation was qualified as an expert in ballistics and testified that he examined the bullet taken from DeLay's body and compared it with the pistol taken from defendant on the night of 30 December 1976. In his opinion, the bullet was fired from defendant's gun.

Defendant testified and offered evidence in the nature of an alibi. He admitted that he owned the pistol taken from him by the military police on 30 December 1976 but denied that he had seen DeLay on that date. He further testified that he did not fire the pistol on that date. He also offered other witnesses whose testimony tended to corroborate his alibi defense.

On rebuttal, the State offered medical testimony concerning the treatment of DeLay's wound and to the effect that the bullet was removed on 17 July 1977. The State also offered other corroborative and cumulative evidence.

The jury returned verdicts of guilty on each count. Defendant was sentenced to twenty years imprisonment on the charge of assault with a deadly weapon with intent to kill inflicting serious injury, a consecutive sentence of life imprisonment on the charge of kidnapping and an additional sentence of life imprisonment on the charge of armed robbery, which was imposed without provision that it was to run consecutively.

*Rufus L. Edmisten, Attorney General, by Jane Rankin Thompson, Associate Attorney, for the State.*

*James M. Cooper, for defendant appellant.*

BRANCH, Justice.

[1] Defendant first assigns as error the denial of his plea of former jeopardy. At the 9 May 1977 Session of Cumberland Superior Court, defendant was put to trial on the same charges for which he was prosecuted in instant case. After several hours of deliberation, the jury transmitted the following note to the presiding judge:

State v. Alston

Your Honor, due to lack of sufficient evidence, the jury cannot come to the agreement that this defendant, George Alston, is in fact the man that committed these crimes.

Thereafter the jury returned to the courtroom and the following dialogue took place:

. Court: You have been numerically divided 8 to 4 all day except for the first ballot that you took during the day as you stood, as I recall, 7 to 5 and that there has been no change from the time you first determined that your division was 8 to 4 until this moment?

Foreman: That's right, sir.

Court: Tell me whether, sir, you feel the jury is hopelessly deadlocked and that there is no possibility that it will come into agreement?

Foreman: I am.

Court: Those of you Ladies and Gentlemen who are members of the jury who concur in the view of the foreman that you are hopelessly deadlocked and that there is no possibility that you would ever reach agreement, that is, that the 12 of you would ever be able to concur and agree with regard to a verdict in this matter will you raise your hand.

The remaining jurors indicated their concurrence with the foreman's statement by raising their hands. Judge Godwin thereupon withdrew a juror and declared a mistrial.

In *State v. Battle*, 279 N.C. 484, 183 S.E. 2d 641 (1971), defendant was charged with safecracking. After deliberating for two hours and forty-five minutes, the jurors returned to the courtroom and stated that they were of the opinion that they never could reach a verdict. The trial judge thereupon declared a mistrial. When the cause came on for a retrial, defendant moved for dismissal on the ground of former jeopardy and Judge Burgwyn overruled that plea. This Court affirmed and speaking through Justice Sharp (now Chief Justice) stated:

. . . the general rule is that an order of mistrial in a criminal case will not support a plea of former jeopardy. . . .

When the jurors declare their inability to agree, it must be left to the trial judge, in the exercise of his judicial discretion, to decide whether he will then declare a mistrial or require them to deliberate further. . . .

After a jury has declared its inability to reach a verdict, the action of the trial judge in declaring a mistrial is reviewable only in case of gross abuse of discretion, and the burden is upon defendant to show such abuse. . . . 279 N.C. at 486.

Defendant argues that the written memorandum to the trial judge amounted to an acquittal. We do not agree. The jury had been instructed that one of the possible verdicts which it could return was a verdict of not guilty, and we assume that the jurors possessed sufficient intelligence to comprehend that instruction. Even more convincing is the fact that the entire jury panel unequivocally indicated to the trial judge that there was no possibility that they would ever be able to agree upon a verdict.

The trial judge correctly denied defendant's plea of former jeopardy.

[2] There is no merit in defendant's contention that the trial judge erroneously admitted expert testimony. S.B.I. Agent Douglas Branch was admitted as an expert in the field of ballistics by stipulation of counsel. He testified that he had made extensive tests relative to the pistol taken from defendant's person and the bullet removed from the victim's body. He testified without objection that in his opinion, the bullet taken from the victim's body was fired by the pistol taken from defendant. The district attorney then asked the witness if he had an opinion as to whether any other gun could have fired the bullet. Over objection, the expert witness replied: "Yes sir, I do. It could not have been fired from any other weapon."

The essential question in determining the admissibility of expert opinion evidence is whether the witness has acquired such skill through study or experience so as to make him better qualified than the jury to form an opinion on the subject matter. *State v. Mitchell*, 283 N.C. 462, 196 S.E. 2d 736 (1973); 1 Stansbury's North Carolina Evidence, Section 133 (Brandis rev. 1973). This Court has recently held that an expert's opinion as to

---

State v. Alston

---

whether an unfired .22 cartridge had been chambered in the defendant's rifle was admissible into evidence. *State v. Brown*, 280 N.C. 588, 187 S.E. 2d 85, *cert. denied*, 409 U.S. 870 (1972).

Here the witness's expertise was not challenged. The record is replete with evidence showing his study and experiments with the pistol and bullet, and it is recognized by our Court that guns and bullets are proper subject matter for expert testimony. Certainly this witness was better qualified to express an opinion as to the subject matter of the challenged evidence than the jury.

Defendant next contends that the court committed prejudicial error by permitting the district attorney to cross-examine him about his ability to read a name tag while looking at a .32 caliber pistol.

[3] During his cross-examination, defendant described the clothing he wore on 30 December 1976 including a name tag on his jacket bearing the name "Alston." The witness DeLay had testified that defendant wore a name tag but that it was unreadable. Defendant had previously elicited testimony to the effect that at a previous trial in May, 1977, the witness DeLay had testified that there was no name tag on defendant's jacket. It was in this context that the district attorney asked the question, "Have you ever tried to read it looking a .32 caliber pistol in the face." Defendant, over objection, finally answered, "Yes, the name you could see it plainly." We are inclined to agree with defendant's argument that the district attorney was trying to rehabilitate the State witness's conflicting testimony. The question posed by the district attorney was argumentative and was not designed to elicit competent evidence. *State v. Daye*, 281 N.C. 592, 189 S.E. 2d 481 (1972). However, it is evident that defendant had the better of this exchange and, therefore, no prejudicial error resulted.

[4] During his cross-examination of defendant, the district attorney called his attention to a portion of the transcript of a former trial in which defendant testified that he told a Mr. Gaylor that he had been out gambling on the morning of 30 December 1976. The following exchange then occurred:

MR. GREGORY: Were you gambling with Lomack on the morning of the 30th of December, 1976?

A. No, I was not.

When I told Mr. Desilva at that time under oath was not the truth. I lied about that; I was not gambling. When I testified at that trial, I testified that to be the truth. When I testified today or yesterday that I was not gambling I testified that to be the truth.

MR. GREGORY: Mr. Alston, which one are we to believe?

A. I don't know. You believe which one you want.

MR. GREGORY: Would you know the truth if it stood right there in front of you?

MR. COOPER: Objection.

COURT: Overruled. Answer it.

A. Yes, I would.

It is defendant's position that the trial judge erred by permitting the district attorney to ask defendant, "Would you know the truth if it stood right there in front of you?"

It is improper for the prosecutor to place before the jury inadmissible and prejudicial matter not consistent with the facts in evidence. Likewise, it is improper for counsel to assert his personal opinion concerning the veracity of a witness, *State v. Miller,* 271 N.C. 646, 157 S.E. 2d 335 (1967), or to state that a witness has lied to the jury. *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750 (1974). Nevertheless, considering the context in which the challenged question was asked, we find no prejudicial error. The witness had just admitted that he had given two completely different statements under oath. When the prosecutor inquired as to which should be believed, the witness replied: "You believe which one you want." These facts do not present the picture of a harassed browbeaten witness. Rather, it appears that defendant invited the remark of the district attorney. At most, the question served only to reflect defendant's admission that he had lied under oath.

[5] Defendant further assigns as error the rulings of the trial judge which permitted the district attorney to question him concerning the markings which are made on bullets when fired from

State v. Alston

a gun. Defendant argues that this evidence was irrelevant and that it unduly emphasized the testimony of the ballistics expert which had been offered by the State. We do not agree.

It is well settled that in criminal cases every circumstance that is calculated to throw light upon the supposed crime is relevant and admissible if competent. 2 Strong's North Carolina Index 2d, *Criminal Law*, Section 33 (1967).

Defendant had previously stated that in his Army training, he had studied the makeup of guns sufficiently to know how they operated. However, he stated that he was unable to answer any of the questions concerning the markings made upon a bullet when a gun is fired. Unquestionably, these questions were relevant in that the markings on the bullet offered in evidence by the State tended to show that the bullet which was taken from the victim's back was fired from a gun found in defendant's possession on the same night the crimes were committed. The district attorney was exploring the possibility that defendant might possess sufficient expertise to shed more light upon the relationship between the firearm found in defendant's possession and the bullet taken from the victim's body. Thus, the evidence was relevant and admissible.

[6] Defendant's contention that the trial judge erred by permitting the district attorney to cross-examine him concerning the content of a transcript of a former trial is also without merit. In instant trial, defendant testified that his gun was in his unlocked trailer at the time the charged crimes were committed. On direct examination, defendant stated that he had so testified at a former trial. The district attorney then asked defendant to point out this testimony in the transcript of the former trial.

In this jurisdiction, the scope of cross-examination covers a wide range. It is permissible to impeach or impair the credibility of a witness. The materiality and extent of cross-examination are matters which are largely within the discretion of the trial judge. *State v. Penley*, 277 N.C. 704, 178 S.E. 2d 490 (1971); *State v. Sheffield*, 251 N.C. 309, 111 S.E. 2d 195 (1959).

Here it is obvious that defendant was being cross-examined for the purpose of impeaching him, and we find no abuse of discretion in the ruling of the trial judge. Further, defendant had

already testified that he *knew* that the transcript of the previous trial did not contain any statement about the location of the gun. Thus, his objection to this question was of no avail since evidence of like import had already been admitted without objection. *State v. Van Landingham*, 283 N.C. 589, 197 S.E. 2d 539 (1973).

[7] Defendant assigns as error the trial judge's instruction concerning the offense of kidnapping. He relies upon the recent case of *State v. Fulcher*, 34 N.C. App. 233, 237 S.E. 2d 909 (1977), and cites the failure of the court in instant case to instruct that kidnapping by unlawful confinement means confinement for a substantial period and not merely incidental to the commission of another crime; that kidnapping by unlawful restraint means restraint for a substantial period of time and not merely incidental to the commission of another crime; or that kidnapping by unlawfully moving one from one place to another means movement for a substantial distance and not merely incidental to the commission of another crime.

We allowed certiorari to the North Carolina Court of Appeals in *Fulcher*. By decision filed 17 April 1978, this Court, reasoning that the instructions proposed by the Court of Appeals are changes which are in the province of the Legislature, stated:

It follows that the Court of Appeals erred in its holding that "substantiality" in terms of distance or time is an essential of kidnapping and in its pronouncements that the trial judge must instruct the jury that "confinement" or "restraint," as used in this statute, means confinement or restraint "for a substantial period" and that "removal," as used in this statute, requires a movement "for a substantial distance." . . .

Thus defendant's argument that the charge in instant case was erroneous because of the omission of the substantiality requirements in the charge on kidnapping cannot be sustained.

[8] By this assignment of error, defendant also argues that the evidence before the jury in the case *sub judice* did not support a conviction of kidnapping because the victim willingly accompanied defendant to the place where he was robbed and shot. The evidence does not support this position.

A person may be kidnapped by fraud as well as by force. *State v. Hudson*, 281 N.C. 100, 187 S.E. 2d 756 (1972), *cert. denied*, 414 U.S. 1160 (1974). In our opinion, Mr. DeLay was fraudulently caused to enter defendant's automobile and then taken several miles to the area where the robbery and felonious assault took place. Further, under our present statute, there was ample evidence of kidnapping when defendant produced a pistol and forced Mr. DeLay to walk fifty feet or more into the woods where he committed the felonious assault.

This assignment of error is overruled.

[9] Defendant next argues that the trial judge committed prejudicial error in his charge to the jury by giving greater stress to the State's evidence and by expressing an opinion as to the weight which should be given to certain evidence.

In summarizing the evidence presented by defendant, the trial judge specifically brought to the attention of the jury the evidence which tended to establish defendant's alibi defense, evidence that defendant had never seen DeLay until the probable cause hearing, and defendant's specific denial of the crimes charged. Defendant contends, however, that the trial judge erroneously failed to summarize the evidence pertaining to the victim's ability to recall his assailant's name, whether or not the description given by the victim fit someone other than defendant, and whether or not the car driven by defendant was the one used by the victim's assailant and thereby intimated to the jury that such evidence was unimportant. We disagree.

In summarizing the evidence in his charge to the jury, a trial judge is required to state the evidence only to the extent necessary to apply the law applicable to the case. *Whiteheart v. Grubbs*, 232 N.C. 236, 60 S.E. 2d 101 (1950). He is not bound to recapitulate all of the evidence. *State v. Thompson*, 226 N.C. 651, 39 S.E. 2d 823 (1946); *State v. Gould*, 90 N.C. 658 (1884). Further, absent a special request, the court is not required to summarize that evidence which merely reflects upon the credibility of a given witness. *Smith v. Kilburn*, 18 N.C. App. 204, 196 S.E. 2d 588, *cert. denied*, 283 N.C. 754, 198 S.E. 2d 723 (1973).

Here Judge McLelland recapitulated evidence relating to the elements of the crimes charged, to the identification of defendant

as the perpetrator of the crimes, and to defendant's alibi defense. These were the substantial features of the case. Moreover, the omissions of which defendant complains pertained to the weight or credibility of the victim's identification of defendant. Defendant did not specifically request instructions on this subordinate feature of the case, and the trial judge was, therefore, not required to so instruct the jury. *Metcalf v. Foister*, 232 N.C. 355, 61 S.E. 2d 77 (1950); *Smith v. Kilburn, supra.*

By this same assignment of error, defendant contends that the trial court expressed an opinion as to the weight to be accorded certain evidence (1) by instructing the jury that the truth of certain details need not be established in order to reach a verdict, (2) by instructing the jury that part of the State's evidence was essential to its deliberations, and (3) by intimating to the jury that some of the evidence presented was not essential to its deliberation.

[10]    During the course of the trial, both the State and defendant offered a great deal of evidence concerning the description of the automobile defendant allegedly drove at the time the crimes were committed and minute details as to the physical characteristics of defendant. With respect to this evidence, the trial court instructed the jury as follows:

> Inasmuch as a substantial portion of trial time was taken up with testimony concerning details not of themselves related to the factual elements of the charges against the defendant I deem it necessary to caution you about your consideration of such evidence.

> The name of the defendant is not an issue . . . The defendant's age is not an issue, nor is his height, his race, the stubble on his chin, his clothing, nor the tint, shape or framing of his sunglasses. . . .

> The color of the license plate on David Gaylor's automobile is not an issue, neither is the existence of a crack in the windshield. . . .

> The color of the button on the gear shift lever is not what this trial is about. . . .

[11]    The obvious thrust of this instruction was to tell the jury that it should not be lost in a maze of details in their search for

the answer to the ultimate question of defendant's innocence or guilt. Although the court may have gone into unnecessary detail in making this cautionary instruction, we find no impermissible expression of opinion by the court. The trial judge further clarified the duty of the jurors in this respect by then instructing them that they could and should consider whether or not any given witness had testified truthfully about details not related to the factual elements of the crimes charged. As examples of the details to which he referred, the trial judge mentioned the appearance of Gaylor's car, whether or not it had been washed, the circumstances under which the victim was able to observe his assailant and the fact that he had failed to identify defendant at a photographic lineup. Defendant, however, argues that this latter instruction had the effect of charging the jury that the *State's* evidence was more essential to their deliberations than defendant's. We do not agree.

We first note that the trial court did not limit its recitation of evidence in this instance to that presented by the State. Moreover, the court never stated, or even intimated, that any of this evidence was *essential* to the jury's determination of defendant's guilt or innocence. The trial court *did* instruct the jury that they could consider inconsistencies in details which did not pertain to the essential elements of the charges in determining the degree of credibility to be given any witness. Such an instruction is proper. *Wooten v. Cagle,* 268 N.C. 366, 150 S.E. 2d 738 (1966). The instruction here given fell with equal force upon both the State's and defendant's evidence.

Neither can we agree with defendant's contention that the charge erroneously expressed an opinion that some of the evidence presented was not essential to the jury's deliberation. Our examination of this record shows that the court clearly and correctly instructed the jury that the weight to be given the evidence was a matter solely for determination by it. *Graham v. Gas Co.,* 231 N.C. 680, 58 S.E. 2d 757 (1950).

We hold that the trial judge did not give unequal stress to the State's evidence or express an opinion in violation of G.S. 1-180 in this portion of the charge.

However, defendant's more serious assignments of error relate to the trial judge's instructions which defendant contends

coerced the jury into returning a verdict. Specifically, defendant complains of (1) the court's mention of the inconvenience and expense of empaneling another jury to try the case, (2) the court's statement that an agreement would ease the tension within the jury but that disagreement would be the first step towards deadlock, (3) the court's admonition that the jury should not put up with any juror who wanted to discuss one point endlessly, and (4) an intimation by the court that any juror who found himself in the minority should question the correctness of his decision.

*Allen v. United States*, 164 U.S. 492, 41 L.Ed. 528, 17 S.Ct. 154 (1896), is the landmark case on coercive instructions designed to force a verdict. There the Court approved an instruction to the effect:

> . . . that in a large proportion of cases absolute certainty could not be expected; that although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority. . . . 164 U.S. at 501

[12, 13] Although the instructions approved in *Allen* have long been recognized as acceptable, confusion has arisen because of extensions and modifications made to the originally approved charge by other courts. Therefore, the use of such charge has been the subject of much criticism, *see*, Annot., 41 A.L.R. 3d 1154 (1972); Annot., 38 A.L.R. 3d 1281 (1971); Annot., 100 A.L.R. 2d 177 (1965), and some jurisdictions have abolished their use. *State v. Thomas*, 86 Ariz. 161, 342 P. 2d 197 (1959). However, our Court has solidly established certain rules for our guidance, *e.g.*, a trial

judge has no right to coerce a verdict, and a charge which might reasonably be construed by a juror as requiring him to surrender his well-founded convictions or judgment to the views of the majority is erroneous. *State v. Cousin*, 292 N.C. 461, 233 S.E. 2d 554 (1977); *State v. Roberts*, 270 N.C. 449, 154 S.E. 2d 536 (1967). If the trial judge urges a jury to agree upon a verdict, he should emphasize in language readily understood by a lay juror that he is not injecting his views into the minds of the jurors and that he does not intend that any juror should surrender his own free will and judgment. *State v. McKissick*, 268 N.C. 411, 150 S.E. 2d 767 (1966).

[14] In deciding whether the court's instructions forced a verdict or merely served as a catalyst for further deliberation, an appellate court must consider the circumstances under which the instructions were made and the probable impact of the instructions on the jury. *State v. Cousin, supra; State v. Carter*, 233 N.C. 581, 65 S.E. 2d 9 (1951).

[15] Here the so-called "dynamite charge" was given before the jury had begun its deliberations and consequently before there was any disagreement among the jurors. While the giving of such an instruction as part of the initial charge to the jury has been disapproved, *see, e.g., Credit Union v. Reed*, 42 Ill. App. 2d 336, 192 N.E. 2d 447 (1963), there appears to be a growing trend of authority which supports the use of a mild form of such a charge in the original instructions of the court. McBride, The Art of Instructing the Jury, Section 3.61 (1969). *See also*, N.C. G.S. 15A-1235 (effective 1 July 1978). Thus, absent other factors, giving such an instruction before the jury commences its deliberations is not reversible error. We must, therefore, turn our attention to the specific matters upon which defendant bases this assignment of error.

[16] Initially, we find no error in the court's mention of the inconvenience and expense of another trial should the jury become deadlocked. Although such a charge has been questioned, *see, United States v. Harris*, 391 F. 2d 348 (6th Cir. 1968), our Court has held that the isolated mention of the expense and inconvenience of retrying a case does not warrant a new trial unless the charge as a whole coerces a verdict. *State v. Williams*, 288 N.C. 680, 220 S.E. 2d 558 (1975); *State v. Brodie*, 190 N.C. 554, 130

S.E. 205 (1925). In fact, the general rule appears to be that the trial judge may state to the jury the ills attendant upon disagreement including the resulting expense, the length of time the case has been tried, the number of times the case has been tried and that the case will in all probability have to be tried by another jury in the event that the jury fails to agree. *See*, Annot., 85 A.L.R. 1420 (1933). However, when such matters are mentioned in the court's instructions, the trial judge must make it clear to the jury that by such instruction the court does not intend that any juror should surrender his conscientious convictions or judgment. *Allen v. United States, supra; State v. McKissick, supra.*

[17]   Defendant also assigns as error the trial judge's statements (1) that an agreement would ease the tension within the jury and that disagreement would be "the first firm step toward deadlock" and (2) that the jury "should not talk endlessly nor go over and over again the same point, nor put up with any juror who wants to."

One of the cardinal rules governing appellate review of trial court instructions is that the charge will be read contextually and an excerpt will not be held prejudicial if a reading of the whole charge leaves no reasonable grounds to believe that the jury was misled. *Hammond v. Bullard*, 267 N.C. 570, 148 S.E. 2d 523 (1966); *State v. Truelove*, 224 N.C. 147, 29 S.E. 2d 460 (1944).

The statements of which defendant here complains were part of the following instruction by Judge McLelland:

> . . . I urge all of you to recognize that a duty to make a decision causes tension and discomfort. That making the decision brings relief that it is natural to want that relief and to want it as soon as possible. You should be aware therefore that your natural inclination would be to decide first and to deliberate second and to deliberate only if you have to. If you all agree the tension will be ended quickly and no one will have had the risk of appearing to be foolish but if you do not agree you will have taken differing positions and by doing so will have taken the first firm step toward deadlock.
>
> People not just jurors tend to defend the position that they take and the more those positions are assailed the stouter they defend them. I urge you to deliberate first, I

urge each of you to express your views, not your convictions, your views to your fellow jurors and to listen to what each juror has to say. To be concerned and not so much as convincing the others of the merits of your views as with carefully considering all views in order to be sure that your own have merit. Even when you believe that everything has been said that ought to be said and every view expressed that ought to be expressed, if a juror wants further to explore any phase of the case listen to what that juror has to say and join in the exploration. Of course, you should not talk endlessly nor go over and over again the same point nor put up with any juror that wants to.

You know, I trust, that you may not agree to abide by the decision of the majority. None of you should vote with the majority simply because it is a majority, nor should any of you vote against the majority simply to oppose the majority. Vote your own conviction.

Then, if there is still a division reconsider first the correctness of your own decision, voice to the others not the strength and wisdom of your position and the weakness of the position of those who do not agree with you. You will have done that already but any misgivings you may have about your own decision and any weaknesses known to you. Do not be concerned with saving your face, upholding your integrity, sticking to your guns. *Though you have taken a firm position if after reconsideration and further deliberation with your fellow jurors you come to believe it not correct change it but if you have carefully, fully, openly and honestly considered all of the evidence, the arguments of counsel, the instructions as to the law, the views of every juror and have carefully reconsidered your decision and still believe it correct stick to it though you stand alone.* (Emphasis ours.)

It would appear that the trial judge may have permitted himself to wander into uncharted philosophical fields as he explained the process of deliberation to the jury and that some of his statements, taken out of context, might have been somewhat confusing. However, upon a contextual reading of this charge, we are of the opinion that its impact was to warn the jury not to make a hasty decision without due deliberation and to instruct

them that in the course of such due deliberation they should be willing to openly exchange viewpoints but not endlessly discuss any given point. Taken as a whole, this portion of the charge did not coerce the jury into reaching a verdict.

Further, Judge McLelland completed his charge with a strong admonition, in readily understandable language, that, if after due deliberation, any juror sincerely believed that his decision was correct he should "stick to it though (he) stand(s) alone." While this particular instruction was not given in the exact language previously approved by this Court, *see, State v. McKissick, supra*, we are of the opinion that it was amply sufficient to convey to each member of the jury that he should not surrender any conscientious conviction in order to reach a unanimous verdict. In our opinion, this instruction, given at the termination of the "dynamite charge," dispelled any coercive effect which might have resulted from the challenged statements.

This case is, however, the latest in a long series of cases in which courts have been required to pass upon the acceptability of instructions urging a verdict. Under normal circumstances, we would have deemed it appropriate to here establish definite guidelines in order to prevent future problems with such charges. However, the General Assembly has made such efforts unnecessary by the enactment of G.S. 15A-1235, effective 1 July 1978 which provides:

*Length of deliberations; deadlocked jury.*—(a) Before the jury retires for deliberation, the judge must give an instruction which informs the jury that in order to return a verdict, all 12 jurors must agree to a verdict of guilty or not guilty.

(b) Before the jury retires for deliberation, the judge may give an instruction which informs the jury that:

(1) Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(2) Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

State v. Alston

(3) In the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(4) No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(c) If it appears to the judge that the jury has been unable to agree, the judge may require the jury to continue its deliberations and may give or repeat the instructions provided in subsections (a) and (b). The judge may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(d) If it appears that there is no reasonable possibility of agreement, the judge may declare a mistrial and discharge the jury.

G.S. 15A-1235 is based upon the standards approved by the American Bar Association. *See,* American Bar Association Standards Relating to Trial by Jury, Section 5.4 (Approved Draft 1968). This enactment provides our trial judges and our practicing bar with clear standards for such instructions.

By his final assignment of error, defendant contends that the overall effect of the trial court's charge to the jury was to create an impermissible expression of opinion as to the guilt or innocence of defendant. The specific exceptions which form the basis for this assignment of error have already been addressed in our discussion of defendant's other assignments of error, and we have found that none of them individually warrant granting defendant a new trial. While it is possible that several errors, harmless in and of themselves, may combine to form an expression of opinion, we are not persuaded that such is true in instant case.

In view of the overwhelming evidence in this case pointing to defendant as the perpetrator of the charged crimes and the complete absence of coercion by threat or expression of opinion as to defendant's guilt on the part of the trial judge, it is inconceivable that the court's instructions adversely affected the verdict.

We have carefully reviewed this entire record and find no error sufficiently prejudicial so as to warrant granting defendant a new trial.

No error.