STATE OF NORTH CAROLINA v. JAMES VANTY LAMB

No. 7916SC571

(Filed 18 December 1979)

**Criminal Law § 122.2— jury's failure to reach verdict—instructions improper**

Where the jury foreman advised the court that in his opinion the jury could not reach a decision, the trial court erred in instructing the jurors that, if they did not agree upon a verdict, another jury might be called upon to try the case, that the State and defendant had a tremendous amount of time and money invested in the case, and that retrial involved a duplication of all the time and expense. G.S. 15A-1235.

APPEAL by defendant from *Gavin, Judge*. Judgment entered 26 January 1979 in Superior Court, ROBESON County. Heard in the Court of Appeals 12 November 1979.

The defendant, an employee of Tomberlin Associates, Inc., was convicted of (1) forging an endorsement on a check drawn on the Housing Authority of the City of Lumberton and payable to Tomberlin Associates; and (2) uttering a check with a forged endorsement. The record of the case on appeal contains over 300 exceptions. All have been carefully considered, and one is dispositive.

*Attorney General Edmisten, by Assistant Attorney General Rudolph A. Ashton III, for the State.*

*John Wishart Campbell for defendant appellant.*

HILL, Judge.

The jury in this case began deliberations at approximately 5:25 p.m. and returned to the courtroom at 6:35 p.m. when they

were sent for dinner. At 8:30 p.m. the jury returned to deliberate, and at 9:50 p.m. the sheriff brought them back into the court-room. The judge inquired as to the numerical division of the jury and was advised it was nine to three. The foreman advised the court that in his opinion the jury could not reach a decision, whereupon the court then stated, among other things, that,

> Both the State and the defendants have a tremendous amount of time and money invested in this case.

> If you don't reach a verdict, it means that it will have to be tried again by another jury in this county and that involves a duplication of all the expense and all of the time.

> **********************************

> I don't like to do this at all. I don't want anyone to think that I am trying to coerce a verdict, because I am not. I just feel that the time and expense involved justifies one more effort on your part.

On the following morning at 9:30 a.m., the trial judge further addressed the jury:

> Members of the jury, I presume that you realize what a disagreement means. It means, of course, that it will be another week that will be consumed in the trial of this action again.

> I don't want to force you or coerce you in any way to reach your verdict, but it is your duty to try and reconcile your differences and try to reach a verdict if it can be done without any surrender of one's conscientious convictions.

> You've heard the evidence in this case. A mistrial will mean that another jury will have to be selected to hear the case and the evidence again.

> The court recognizes the fact that there are sometimes reasons why jurors cannot agree. The court wants to emphasize the fact that it is your duty to do whatever you can do to reason this matter over together as reasonable men and women and reconcile your differences if that's possible without the surrender of your conscientious convictions and to reach a verdict.

At 11:13 a.m. a verdict of guilty on both counts was reported to the court.

Did the court err in its charge to the jury in failing to conform with G.S. 15A-1235, which was effective 1 July 1978?

In times long gone by, when a jury was unable to reach a verdict the trial court simply deprived the jurors of food, water, and fire until it reached a verdict. Note, *The Allen Charge: Recurring Problems and Recent Developments*, 47 NYU Law Rev. 296, 296 n. 3 (1972); Becker, *The Criminal Case: The Allen Charge*, TRIAL, Vol. 15, No. 10, p. 46.

Today a more subtle approach is used to break a deadlocked jury. The trial court's charge to the jury remains, with the blessings of the U. S. Supreme Court, the chosen instrument to pressure deadlock juries to reach a verdict. The landmark case of *Allen v. United States*, 164 U.S. 492, 41 L.Ed. 528, 17 S.Ct. 154 (1896), approved a jury charge filled with psychological pressures, the most salient portion being as follows:

> . . . that in a large proportion of cases absolute certainty could not be expected; that, although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor, and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the large number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority were for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority. 164 US at 501.

The United States Supreme Court has not directly examined the "Allen Charge" since 1896. Consequently, this potentially coercive device has been rebounding through the civil and criminal justice systems for over eighty years. The thrust of the charge, coupled with its widespread use, has earned for it the

title of the "dynamite charge." "During this period some judges have applied the Allen Charge, others have embellished and tinkered with it, while still others have courageously refused to allow its use." TRIAL, *supra*, at 47.

Consider only a few of the problems which the charge has generated:

> Because it instructs the jury to consider extraneous and improper factors, inaccurately states the law, carries a potentially coercive impact, and burdens rather than facilitates the administration of justice, we conclude that further use of the. charge should be prohibited in California.

*People v. Gainer*, 19 Cal. 3d 835, 842, 139 Cal. Rptr. 861, 864, 566 P. 2d 997, 1000 (1977).

Certainly one of the most questionable features of the "Allen Charge" is its discriminatory admonition directed to the minority jurors to rethink their position in light of the view of the majority. Such an instruction violates the basic tenets of American justice. Such a charge places the sanction of the court behind the majority view and urges minorities to relinquish their view simply because they are in the minority.

There are other embellishments:

(1) . . . the case at sometime must be decided.

This is legally inaccurate and simply not true as any trial lawyer knows.

(2) . . . the expense and inconvenience of a retrial.

Both convictions *and* not guilty verdicts cost less than retrials.

Some federal decisions indicate the "dynamite charge" " . . . should be used with great caution, and only when absolutely necessary." *U. S. v. Flannery*, 451 F. 2d 880 (1st Cir. 1971); others state that the "Allen Charge" stands by the "barest margin." *U.S. v. Kenner*, 354 F. 2d 780 (2d Cir. 1965), *cert. denied* 383 U.S. 958; some reverse when there is the slightest deviation from the original Allen Charge. *See U.S. v. Harris*, 391 F. 2d 348 (6th Cir. 1968), *cert. denied* 393 U.S. 874; *U.S. v. Rogers*, 289 F. 2d 433 (4th Cir. 1961); while still others have indicated they would disallow

portions of the charge, e.g., urging the minority jurors to rethink their position. *Walsh v. U.S.*, 371 F. 2d 135 (9th Cir. 1967), *cert. denied* 388 U.S. 915.

At least three federal circuits have banished the Allen Charge in the exercise of their supervisory powers and replaced it with the ABA standard: the District of Columbia, the Seventh Circuit, and the Third Circuit. See *U.S. v. Thomas*, 449 F. 2d 1177 (D.C. Cir. *en banc* 1971); *U.S. v. Brown*, 411 F. 2d 930 (7th Cir. 1969), *cert. denied* 396 U.S. 1017; *U.S. v. Fioravanti*, 412 F. 2d 407 (3d Cir. 1969), *cert. denied* 396 U.S. 837.

The American Bar Association has recognized the problem with growing concern over the years, and in 1968, through its Project on Minimum Standards for Criminal Justice, published a modification of the Allen Charge. The suggested ABA instruction is in the form of directions to the trial court, which the court may paraphrase in delivery to the jury:

5.4 Length of deliberations; deadlocked jury.

(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

(i) that in order to reach a verdict, each juror must agree thereto;

(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement if it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their

deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or unreasonable intervals.

(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement.

"The Commentary accompanying the [above] text indicates that the new charge is designed to be less coercive because it tells *all* jurors to consult with one another in reaching a verdict rather than singling out the minority alone. The Commentary explicitly demands that the *Allen* Charge no longer be used." Note, *Supplemental Jury Charges Urging a Verdict—The Answer is Yet to be Found,* 56 Minnesota Law Review 1199, 1204 (1972).

North Carolina has long been cognizant of the growing awareness of possible coerciveness when the Allen Charge or modification thereof is used. Nevertheless, the court has never abolished the charge. The uniform recommended charge in N.C.P.I.—Crim. 101.40 recommends the following as a model for juries appearing to be deadlocked:

I presume you ladies and gentlemen realize what a disagreement means. It means, of course, that it will be [another week of the] [more] time of the Court that will have to be consumed in the trial of this action again. I don't want to force you or coerce you in any way to reach a verdict, but it is your duty to try to reconcile your differences and reach a verdict if it can be done without any surrender of one's conscientious convictions. You have heard the evidence in the case. A mistrial, of course, will mean that another jury will have to be selected to hear the case and evidence again. The Court recognizes the fact that there are sometimes reasons why jurors cannot agree. The Court wants to emphasize the fact that it is your duty to do whatever you can to reason the matter over together as reasonable men and women and to reconcile your differences, if such is possible, without the surrender of conscientious convictions, and to reach a verdict. I will let you resume your deliberations and see if you can.

In the recent case of *State v. Alston,* 294 N.C. 577, 243 S.E. 2d 354 (1978), Justice Branch (now Chief Justice) addressed the

problems dealing with deadlocked juries and the responses thereto by trial judges.

In the *Alston* case the defendant complained of,

(1) the court's mention of the inconvenience and expense of empaneling another jury to try the case;

(2) the court's statement that an agreement would ease the tension within the jury but that disagreement would be the first step towards deadlock;

(3) the court's admonition that the jury should not put up with any juror who wanted to discuss one point endlessly; and

(4) an intimation by the court that any juror who found himself in the minority should question the correctness of his decision. *Alston*, at 592.

Justice Branch cited the *Allen* case, acknowledged that confusion had arisen because of modifications and extensions, and then stated:

However, our Court has solidly established certain rules for our guidance, *e.g.*, a trial judge has no right to coerce a verdict, and a charge which might reasonably be construed by a juror as requiring him to surrender his well-founded convictions or judgment to the view of the majority is erroneous. (citations omitted) *Alston*, at 592.

In *Alston*, the so-called "dynamite charge" was given before the jury had begun its deliberations and consequently before there was any disagreement among the jurors. Justice Branch noted that, absent other factors, giving such an instruction *before* the jury commences its deliberations is not reversible error, and proceeded to address the objections:

(1) The Court has held that the isolated mention of the expense and inconvenience of re-trying a case does not warrant a new trial unless the charge as a whole coerces a verdict. *State v. Williams*, 288 N.C. 680, 220 S.E. 2d 558 (1975); *State v. Brodie*, 190 N.C. 554, 130 S.E. 205 (1925).

(2) The statements that an agreement would ease tension within the jury, and disagreement would be the first step

toward deadlock and that the jury should not talk endless-
ly did not constitute error. In our State a cardinal rule is
that the charge will be read contextually and an excerpt
will not be held to be prejudicial if a reading of the whole
charge leaves no reasonable grounds to believe that the
jury was misled. *Hammond v. Bullard,* 267 N.C. 570, 148
S.E. 2d 523 (1966). Hence, in *Alston,* the entire charge left
no basis for a juror to believe he was being coerced into a
verdict.

(3) Language which instructs a juror in the minority to ques-
tion the correctness of his decision must be tempered
with other language in which the trial judge must make it
clear to the jury that by such instruction the court does
not intend that any juror should surrender his conscien-
tious convictions or judgment. *Allen v. U.S., supra; State
v. McKissick,* 268 N.C. 411, 150 S.E. 2d 767 (1966).

Justice Branch then concluded that the instructions given by
the trial judge at the termination of the "dynamite charge"
dispelled any coercive effect which might have resulted from the
challenged statements.

Thereupon, Justice Branch continued,

This case is, however, the latest in a long series of cases
in which courts have been required to pass upon the ac-
ceptability of instructions urging a verdict. Under normal cir-
cumstances, we would have deemed it appropriate to here
establish definite guidelines in order to prevent future prob-
lems with such charges. However, the General Assembly has
made such efforts unnecessary by the enactment of G.S.
15A-1235, effective 1 July 1978 which provides:

*Length of deliberations; deadlocked jury.* —(a) Before the
jury retires for deliberation, the judge must give an instruc-
tion which informs the jury that in order to return a verdict,
all 12 jurors must agree to a verdict of guilty or not guilty.

(b) Before the jury retires for deliberation, the judge
may give an instruction which informs the jury that:

(1) Jurors have a duty to consult with one another and to
deliberate with a view to reaching an agreement, if it
can be done without violence to individual judgment;

(2) Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(3) In the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(4) No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(c) If it appears to the judge that the jury has been unable to agree, the judge may require the jury to continue its deliberations and may give or repeat the instructions provided in subsections (a) and (b). The judge may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(d) If it appears that there is no reasonable possibility of agreement, the judge may declare a mistrial and discharge the jury.

G.S. 15A-1235 is based upon the standards approved by the American Bar Association. *See,* American Bar Association Standards Relating to Trial by Jury, Section 5.4 (Approved Draft 1968). This enactment provides our trial judges and our practicing bar with clear standards for such instructions. *Alston,* at 596, 597.

G.S. 15A-1235 arose as part of an examination by the Criminal Code Commission entitled, *The Legislative Program and Report to the General Assembly of North Carolina.* In the report, at the conclusion of the language which later was to become G.S. 15A-1235, appears the exact language that is now set out in the Official Commentary to G.S. 15A-1235. The passage states that,

The Commission considered three possible approaches to the deadlocked jury:

(1) the 'weak' charge set out in the A.B.A. Standards;

(2) the 'strong' Allen charge traditionally used in the federal courts; and

(3) the even stronger charges authorized under North Carolina case law.

After much discussion, the Commission approved this section, which in its essentials follows A.B.A. Standards, Trial by Jury § 5.4. The Commission deleted from its draft a provision previously sanctioned under North Carolina case law which would have authorized the judge to inform the jurors that if they do not agree upon a verdict another jury may be called upon to try the case.

The four subdivisions of subsection (b) are linked together with the conjunction 'and.' This reflects the Commission's view that whenever the judge gives any of the instructions authorized by subsection (b), he must give all of them.

Subsection (c) requires that the instructions to a deadlocked jury must contain all the provisions of subsections (a) and (b).

The Report of the Criminal Code Commission was directed to the General Assembly and used by the Assembly in its deliberations concerning this statute. The legislature — with the Commentary before it — adopted the statute and inherently acknowledged the limitations imposed by the Official Commentary.

Therefore, as of 1 July 1978, deadlocked juries are to be instructed in accordance with the guidelines established by G.S. 15A-1235.

The case before us was tried at the 4 December 1978 Session of the Robeson County Superior Court and is bound by the limitations set out in G.S. 15A-1235. It was error under the then existing law for the court to charge the jurors that if they did not agree upon a verdict another jury might be called upon to try the case; that the State and defendants had a tremendous amount of time and money invested, and retrial involved a duplication of all the time and expense.

For the reasons set out above, the case is

Reversed and remanded for a new trial.

Chief Judge MORRIS and Judge PARKER concur.