STATE OF NORTH CAROLINA v. ROBERT JONES

No. 8012SC155

(Filed 15 July 1980)

1. **Criminal Law § 92.3– failure to join charges – no error**

   The trial court did not err in denying defendant's motion to dismiss for failure to join related offenses where the indictments in the present case were returned against defendant after two mistrials had been entered, and there could have been no joinder of offenses because, when the first offenses were tried, there was no other offense to join with the first.

State v. Jones

2. **Criminal Law § 92.3– motion to dismiss for failure to join offenses – offense as indictment**

As used in G.S. 15A-926(c)(2), which requires the granting of a defendant's motion to dismiss a charge of a joinable offense when he has been tried for one offense and has made a timely motion to dismiss, the word "offense" may be construed to mean "indictment."

3. **Criminal Law § 34.5– defendant's guilt of other offenses – admissibility to show identity**

In a prosecution for sale and delivery of heroin, the trial court did not err in admitting into evidence testimony concerning charges of misconduct by defendant several days after the crime with which he was charged, since such evidence was admissible to prove the identity of defendant.

4. **Conspiracy § 6– conspiracy to sell and deliver heroin – sufficiency of evidence**

In a prosecution for conspiracy to sell and deliver heroin, evidence was sufficient to be submitted to the jury where it tended to show that two undercover narcotics agents met defendant at his address and went with him in a car to another house; there defendant met with a person and briefly conversed with him; and that person handed defendant a small package of heroin which defendant then sold to one of the agents.

5. **Criminal Law § 86.4– cross-examination of defendant – other offenses – impeachment**

Defendant who was charged with narcotics offenses could properly be asked if he filed income tax returns for a given year, since a defendant may be cross-examined for impeachment purposes as to other criminal or degrading conduct; moreover, defendant had already answered the question once in the absence of an objection by his counsel, thereby curing any possible error in its admission.

6. **Criminal Law § 113.1– court's recapitulation of evidence – no error**

Defendant was not prejudiced by the trial court's recapitulation of the evidence that after defendant met with another person and had a brief conversation with him, the other person handed defendant a small tinfoil package and defendant in turn handed the package to an undercover narcotics agent, since defendant's counsel did not call to the court's attention any error; the evidence did show that defendant was handed a tinfoil package which he then handed to the agent; and the court cautioned the jury to take the evidence as they recalled it and not as he summarized it for them.

7. **Criminal Law § 122.2– failure of jury to reach verdict – instructions not prejudicial**

When the jury informed the court that it was divided ten to two, the court's response that the jury could continue to deliberate that night, could return to deliberate the next day, and had two more days in which deliberations could take place did not coerce the jury into reaching a decision, particularly in light of the court's instruction the following morning that the jury should reach a unanimous verdict if possible without surrendering

their conscientious convictions; furthermore, the court's instruction that a disagreement meant "that if this case is not brought to a verdict as I previously instructed you that another judge and another jury in another week will try this case again" was not erroneous since an isolated mention of the necessity to retry the case does not warrant a new trial unless the charge as a whole is coercive.

8. **Criminal Law § 122.1–jury's request to have testimony read again – refusal not abuse of discretion**

 The trial judge did not abuse his discretion in refusing to allow the jurors to have certain testimony read back to them after deliberations had begun, since the judge explained that the witness whose testimony was requested by the jury was one of a number of witnesses, and the court did not want to give special emphasis to any particular witness.

APPEAL by defendant from *Preston, Judge*. Judgment entered 25 October 1979 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 10 June 1980.

Defendant appeals from a judgment of imprisonment entered after verdicts of guilty were returned by the jury on charges of possession with intent to sell and deliver heroin, sale and delivery of heroin, and conspiracy to sell and deliver heroin. These offenses occurred on 21 September 1978; defendant was indicted on the charges 26 March 1979.

Defendant had earlier been indicted for possession with intent to sell and deliver heroin and the sale and delivery of heroin, offenses which allegedly occurred on 29 August and 1 September 1978. Trials on these charges, held 30 January and 6 March 1979, resulted in mistrials. On 10 April 1979 these charges against defendant were dismissed by the state because the state had no new evidence to warrant another trial.

Defendant moved to have the remaining charges, on which he was ultimately convicted, dismissed pursuant to N.C.G.S. 15A-926(c) for failure of the state to join them with the previous offenses. After defendant presented evidence on the pretrial motion, the court denied the motion.

The state presented testimony by Mary Patterson, an undercover agent for the SBI, and Ottis Alexander Rousseau, a federal narcotics agent, that on 21 September 1978 they met the

defendant at 708 Campbell Terrace, Fayetteville, North Carolina. After talking with him, they drove to a house where defendant had a brief conversation with another person. After receiving a "small tinfoil package" from that person, defendant handed it to Rousseau in exchange for $350 in marked bills. The SBI lab subsequently determined that the package contained heroin.

Defendant's motion for dismissal at the close of the state's evidence was denied.

Defendant presented evidence to show that he did not live at 708 Campbell Terrace in Fayetteville. He travels up and down the East coast as a disc jockey. He had never seen either Rousseau or Mary Patterson before his trial. He neither possessed, sold, nor conspired to sell heroin, on 21 September 1978 or at any other time.

Defendant's motion for dismissal at the close of all the evidence was denied. Motions for dismissal after the verdicts and after judgment were also denied.

*Attorney General Edmisten, by Assistant Attorney General Thomas H. Davis, Jr., for the State.*

*Pope, Reid, Lewis & Deese, by Renny W. Deese, for defendant appellant.*

MARTIN (Harry C.), Judge.

Defendant brings forward ten assignments of error. After a careful review of them, however, we conclude that defendant's trial was free of prejudicial error.

[1]  Defendant first argues that the court erred in denying his motion to dismiss for failure to join related offenses. He relies upon N.C.G.S. 15A-926(c)(2), which requires the granting of a defendant's motion to dismiss a charge of a joinable offense when he has been tried for one offense and made a timely motion to dismiss, with three exceptions. It is unnecessary that we discuss these statutory exceptions in an attempt to find one

applicable to this case. Based on this Court's reasoning in *State v. Cox*, 37 N.C. App. 356, 246 S.E. 2d 152, *disc. rev. denied, appeal dismissed*, 295 N.C. 649, 248 S.E. 2d 253 (1978), *cert. denied*, 440 U.S. 930 (1979), we do not believe that this statute mandates the dismissal of the charges on which defendant was tried and convicted. As the Court stated: "At the outset, we note that defendant had not been charged with the offense of accessory after the fact to armed robbery. There could be no joinder of offenses in the absence of a second offense to join with the first." *Id.* at 361, 246 S.E.2d at 154. Here, defendant was indicted for the present offenses on 26 March 1979; these indictments were returned against defendant *after* the two mistrials of 30 January and 6 March. There could have been no joinder of offenses because when the first offenses were tried, there was no other offense to join with the first. In parallel circumstances, our Supreme Court found that N.C.G.S. 15A-926 simply did not apply. In *State v. Furr*, 292 N.C. 711, 235 S.E. 2d 193, *cert. denied*, 434 U.S. 924 (1977), defendant was tried for murder on 12 January 1976. At that time no indictments had yet been returned against him for solicitation. On 9 February 1976 bills of indictment for solicitation were returned. The Court held that the latter bills could not have been joined with the murder charge.

[2]  We note additionally that contrary to defendant's contention that "offense" should not be construed as meaning "only indictments," the Courts in *Furr* and *Cox* construed the word to mean "indictment." Defendant's first assignment of error is overruled.

[3]  Next, defendant contends the court erred by allowing into evidence uncharged acts of misconduct by defendant. At trial the district attorney questioned a witness for the state about defendant's actions on 25 September 1978, four days after the date on which the charged offenses occurred. Over objections, the court allowed evidence of a telephone call to defendant and a subsequent meeting with defendant to arrange another purchase of heroin. The court then sustained defendant's continuing objections and, on its own initiative, instructed the jury that the "sole purpose of the line of questioning concerning any event that may have occurred on the 25th of September, 1978, is

for the purpose of identifying the defendant, if in fact, you find that it does." Again the court stated that the evidence "has to do solely with respect to identification if in fact, you find that it does."

Defendant concedes that there is case authority for the principle that evidence of prior or subsequent purchases of drugs is relevant and admissible to show modus operandi, guilty knowledge, or defendant's state of mind. His argument is that in this case the evidence was not offered or admitted for any of these authorized purposes. It is clear, however, that evidence of other misconduct is admissible to prove the relevant fact of identity. 1 Stansbury's N.C. Evidence § 92 (Brandis rev. 1973). This assignment of error is overruled.

[4] Defendant assigns error to the court's denial of his motions to dismiss, questioning the sufficiency of the evidence to take the case to the jury solely as it relates to the conspiracy charge. Defendant accurately capsulizes the task the state undertakes in attempting to prove a criminal conspiracy: it must show an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way. *State v. Bindyke*, 288 N.C. 608, 220 S.E. 521 (1975). The familiar test to be applied upon a motion to dismiss is whether there is substantial evidence of all material elements of the offense, considering all the evidence admitted in the light most favorable to the state and with the state entitled to every reasonable inference therefrom. *Stave v. Furr, supra; State v. Barbour*, 43 N.C. App. 143, 258 S.E. 2d 475 (1979). Applying this test to the present case, we find the trial court did not err in allowing the conspiracy charge to go to the jury. The state's evidence showed that Mary Patterson and Rousseau met defendant on 21 September 1978 at his address and went with him in a car to another house. There defendant met with a person and briefly conversed with him. That person handed defendant a small package of heroin, which defendant then sold to Rousseau. This evidence was sufficient to survive the motion to dismiss. It does not, as defendant contends, leave in the realm of conjecture the crucial question whether an unlawful agreement existed. This assignment of error cannot be upheld.

**[5]** On cross-examination of defendant by the district attorney, he was asked whether he filed income tax returns for 1978. Without objection, defendant answered no. Defendant's counsel then objected to a repetition of the question. Defendant excepted to the court's overruling his objection and assigns it as error. In addition to the fact that defendant had already answered the question in the absence of an objection by his counsel, thereby curing any possible error in its admission, *State v. Van Landingham*, 283 N.C. 589, 197 S.E. 2d 539 (1973), it was within the discretion of the court to permit the question. On cross-examination of defendant in a criminal case, it is permissible for impeachment purposes to ask disparaging questions concerning collateral matters relating to his criminal and degrading conduct, and such questions are permissible within the discretion of the court. *State v. Black*, 283 N.C. 344, 196 S.E. 2d 225 (1973). Clearly, no abuse of discretion is evident here. There is no merit in this assignment of error.

Three of defendant's assignments of error criticize the court's instructions to the jury.

**[6]** Defendant argues the court erred in recapitulating the state's evidence to the jury. He takes exception to the court's statement that after defendant met with another person and had a brief conversation with him, "[t]he other person handed the defendant a small tinfoil package and the defendant in turn handed the small tinfoil package to Agent Rousseau." His contention is that the record is totally void of any such evidence, and he attempts to rely on the principle that although ordinarily the court should be informed of an inaccuracy in the recapitulation of the evidence in time for correction, a statement of a material fact not in evidence will constitute reversible error, whether or not defendant's counsel called it to the court's attention. *State v. Barbour*, 295 N.C. 66, 243 S.E. 2d 380 (1978). In *Barbour*, the court's instruction indicated that when defendant entered a room he had a pistol in his hand. The only witness to the shooting, however, had nowhere testified that she saw a gun in defendant's hand when he entered the room. The instruction was found to be highly misleading and prejudicial. In the case sub judice, one witness testified that after defendant talked with another man, that man went into a house across the

street and came out in less than five minutes. The witness continued:

> He then came back across the street and handed Robert Jones (defendant) something in his hand. I did not see what it was. The other man and Robert Jones were talking briefly and the other man seemed a little angry. Then Robert Jones came to the car and handed Agent Rousseau a package of aluminum paper, tinfoil, or whatever you call it.

Another witness similarly testified that the man whom defendant met unlocked the door to a residence across the street and went inside for three to five minutes. Then he came out, and the witness "observed him to have a foil package in his hands which he put in his front pocket." He then walked across the street and conferred with defendant. "I saw their hands meet . . . I did not see what was in their hands . . . . Then Robert Jones walked to where I was in my vehicle . . . handed me a tinfoil package which I opened and observed to contain white powder."

We do not think the court committed prejudicial error in its summary of this evidence. Defendant's counsel did not call to the court's attention any error, and the rule in *Barbour* is not applicable because the evidence does show that defendant was handed a tinfoil package, which he then handed to Rousseau. Further, in his charge to the jury the trial judge cautioned as follows:

> The law provides, members of the jury, that I give you a brief resume of the evidence. I caution you at the outset that you will take the evidence as you recall it and not as I recall it nor these attorneys. Though, I told you earlier that they could comment upon the evidence and the law requires me to give you a brief resume but you are to consider all of the evidence and not just what I mention some of it tends to show.

Considering the charge as a whole, we do not find prejudice. This assignment of error is overruled.

[7] Defendant's next two assignments of error focus on the

court's instructions relevant to the jury's deliberations. After retiring and taking a vote, the jury returned and informed the court that it was divided ten to two. The court responded:

> Okay. Well, would you think further deliberations tonight would be of benefit or do you wish to come back tomorrow and continue your deliberations. We have got Thursday and we have got Friday.

After the foreman gave his opinion that it would do no good to deliberate any longer, that night or the next day, the court released the jurors until the next morning.

Defendant contends that because of the court's comments the jury was distinctly impressed with the prospect of an unreasonably lengthy deliberation unless it reached a unanimous verdict and, therefore, the jury's deliberations were "coercively affected." Defendant argues that N.C.G.S. 15A-1235(c) was violated. We cannot agree. Not only is a two-day period not an unreasonable length of time under the statute, but the court's instruction to the jurors when they assembled the next morning was free of coercion:

> I don't want to intimate coercion at all but I do tell you that it is your sworn duty to try to reach a verdict, unanimous verdict. To try to reconcile your differences but you must do so if at all without surrendering your own conscientious convictions. You have heard the evidence and you have heard the charge of the court, you have heard the arguments of counsel and I fully realize, after fourteen years of this, that there are instances in which twelve good people cannot agree as to what the facts are in seeking to reach a unanimous verdict but it is your duty to do whatever you can to reason the matter together as reasonable men and women and to reconcile your differences if such is possible without surrendering your conscientious convictions, and so, I will send you back in and let you continue to deliberate.

We also find, contrary to defendant's contention, that the court did not err in instructing the jury that a disagreement means "that if this case is not brought to a verdict as I previous-

ly instructed you that another judge and another jury in another week will try this case again." Isolated mention of the necessity to retry the case does not warrant a new trial unless the charge as a whole is coercive. *State v. Alston,* 294 N.C. 577, 243 S.E. 2d 354 (1978). Further, this instruction is not on a par with that held to be reversible error in *State v. Lamb,* 44 N.C. App. 251, 261 S.E. 2d 130 (1979). In *Lamb* the trial court had made the following statements:

> "Both the State and the defendants have a tremendous amount of time and money invested in this case.

> "If you don't reach a verdict, it means that it will have to be tried again by another jury in this county and that involves a duplication of all the expense and all of the time."

*Id.* at 252, 261 S.E. 2d at 130. In the instruction given by the court in the present case, there is no emphasis on the time, money, and expense involved; in fact, no mention is made of any of these factors. This assignment of error is overruled.

[8] The eighth question raised by defendant is whether the court erred in refusing to allow the jurors to have certain testimony read back to them after deliberations had begun, especially after a photograph had been allowed into the jury room upon request. N.C.G.S. 15A-1233(a) clearly provides that it is within the judge's discretion to direct that requested parts of the testimony be read to the jury. The judge explained to the jury his reason for not allowing Rousseau's statement to be read back: "[H]e is one of a number of witnesses and the court would not want to give special emphasis to any particular witness." There was no abuse of discretion by the trial court.

We find no merit in defendant's ninth assignment of error. We agree with the state's argument that unlike Mary Patterson, a convicted felon who had become an undercover agent through a beneficial agreement with the state, federal agent Rousseau had no considerable interest in the outcome of the case. The court, therefore, did not commit prejudicial error in instructing on the possible interest Mary Patterson had and in failing to instruct on any

interest Rousseau might have.

Finally, defendant contends the court erred in failing to instruct on the limited purpose of the corroborating evidence offered by agent Rousseau, after so instructing regarding testimony of Mary Patterson. During the trial the court did instruct the jury that testimony given by William Wolak, special agent with the SBI, was for the purpose of corroborating Mary Patterson's testimony and Rousseau's testimony. Furthermore, it was not error for the court to fail to give a limiting instruction in the charge when defendant did not specifically request such an instruction. *State v. Sauls*, 291 N.C. 253, 230 S.E. 2d 390 (1976), *cert. denied*, 431 U.S. 916 (1977).

In the defendant's trial, we find

No error.

Judges HEDRICK and MARTIN (Robert M.) concur.