STATE OF NORTH CAROLINA v. JOHNNIE SUE LIPFIRD DEFENDANT AND STATE OF NORTH CAROLINA v. LARRY CLINTON LIPFIRD DEFENDANT

No. 8025SC107

(Filed 16 September 1980)

1. **Constitutional Law § 50-- Speedy Trial Act not violated**

There was no merit to defendants' contention that the Speedy Trial Act was violated because they were not brought to trial within 120 days of their arrest where there was nothing in the record to support their contention that they were arrested for "an offense based on the same acts or transactions" at a time earlier than that indicated in the record, and there was nothing in the record to show that the trial judge, in denying their motions to dismiss, considered anything other than the fact that defendants were brought to trial within 120 days of the "date of indictment (30 April 1979)."

2. **Criminal Law § 92.2-- consolidation of offenses — no abuse of discretion**

Defendants were not deprived of a fair trial by the consolidation of their cases for trial, and the trial court did not abuse his discretion in consolidating offenses which were of the same class and were so connected in time and place that evidence at trial upon one indictment was competent and admissible on the other.

3. **Criminal Law § 122.2-- failure of jury to reach verdict — instructions — no coercion**

The trial judge did not violate G.S. 15A-1235 and coerce the jury into returning a verdict where the jury returned to the courtroom after an hour's deliberation, requested additional instructions, and indicated that some of the jurors felt they did not have enough evidence to reach a verdict; the trial judge recessed court until the following morning; and on the following morning he answered the jurors' questions and then instructed them that "a mistrial, of course, will mean that more time and another jury will have to be selected to hear the cases and this evidence again," and they should try "to reconcile your differences if such is possible without surrendering your conscientious convictions."

APPEAL by defendants from *Kirby, Judge.* Judgments entered 30 August 1979 in Superior Court, CATAWBA County. Heard in the Court of Appeals on 28 August 1980.

Defendant Johnnie Sue Lipfird was charged under proper indictments dated 30 April 1979 with felonious breaking and entering, felonious larceny, and safecracking. Defendant Larry Clinton Lipfird was charged under proper indictments dated 30 April 1979 with felonious breaking and entering, felonious larceny, and safecracking.

Defendants, on 2 July 1979, moved to dismiss the charges for denial of a speedy trial in violation of the United States and North Carolina Constitutions, and in violation of G.S. § 15A-701 *et seq.* On 13 July 1979, Judge Wood denied the motions. Thereafter, on 23 July 1979, defendants made motions for appropriate relief on the grounds of denial of a speedy trial, and in an order filed 22 August 1979, defendant Johnnie Sue Lipfird's motion was denied. On 28 August 1979, the State's motion to consolidate the trials of the defendants was granted.

At trial, the State's evidence tended to show the following: On 23 December 1978, the Billy R. Wycoff family left their home at Route 11, Hickory, to visit relatives in Chicago, Illinois. The doors and windows in the house were locked, as was a 200 pound safe containing approximately $21,415 located in a closet in the back bedroom of the house. On the evening of 25 December 1978, Orville Dean Moody, Hiram "Sonny" Carroll, and defendants met at defendants' trailer to discuss stealing a safe that defendants claimed contained $22,000 from the Wycoff home, which defendants knew to be unoccupied at the time. At approximately 9:00 p.m. that evening, defendants, Moody, Carroll, and one Mary Beth Martin drove to the Wycoff residence in defendant Larry Lipfird's car. At defendant Larry Lipfird's direction, Moody and Carroll, with socks over their hands, proceeded to the kitchen door. Moody and Carroll then taped up the bottom window in the door with electrician's tape so that breaking the window "would not make noise or shatter." Carroll broke the window with his fist, reached in and unlocked the door. As instructed by defendant Larry Lipfird, Moody went to the closet in the back bedroom and found the safe and they then "picked up the safe and took it outside to the carport." Moody

State v. Lipfird

and Carroll carried the safe across the front yard and the high-way, "dropping the safe in a ditch a couple of times because cars were coming up and down the road," and proceeded into some woods where they met the others who had been driving up and down the road in front of the Wycoff residence. The group then returned to defendants' trailer. Carroll and defendant Larry Lipfird carried the safe to the bedroom where they and Moody "started hitting on the safe with crowbars bending the locks off and knocking the dial off trying to get the safe open." The men finally got the safe open, removed the money but left the other contents, and then took the safe to Gunpowder Bridge, where they dumped the safe "into the middle of the water there."

When the Wycoff family returned from Chicago on 27 December 1978, they found the broken window on the kitchen door and the safe missing. Mrs. Elsie Wycoff testified that she never gave defendants permission to take the safe or its contents and that she never received any of the money.

Defendants offered no evidence.

The jury found defendants guilty as charged, and on 30 August 1979, the court entered judgment sentencing defendant Johnnie Sue Lipfird to a prison term of not less than eight nor more than fifteen years, and sentencing defendant Larry Clinton Lipfird to a prison term of not less than eighteen nor more than twenty-five years. Defendants appealed.

*Attorney General Edmisten, by Associate Attorney Barry S. McNeill, for the State.*

*Sigmon, Clark and Mackie, by Barbara H. Kern, for the defendant appellant Johnnie Sue Lipfird.*

*John D. Ingle, for the defendant appellant Larry Clinton Lipfird.*

HEDRICK, Judge.

[1] Defendants first assign error to the denial of their motions to dismiss and for appropriate relief. Defendants argue that the "Speedy Trial Act," G.S. § 15A-701 *et seq.*, was violated since

they were not brought to trial within 120 days "of [their] arrest on an offense based on the same acts or transactions as Appellant[s] [were] tried for in the cases at bar." While we realize that defendants insist they were arrested for "an offense based on the same acts or transactions" at a time earlier than is indicated in the record, there is nothing in the record before us to support this contention, or to show that the trial judge, in denying their motions to dismiss and for appropriate relief, considered anything other than the fact that defendants were brought to trial within 120 days of the "date of indictment (30 April 1979)." The assignments of error addressed to this point are not sustained.

[2] Defendants also contend, by their seventh assignment of error, that they were deprived of a fair trial by the consolidation of their cases for trial, and by the trial court's denial of their motion to sever at the close of the State's evidence. "Ordinarily, motions to consolidate cases for trial are within the sound discretion of the trial judge. *State v. Alford*, 289 N.C. 372, 222 S.E. 2d 222 (1976); *State v. King*, 287 N.C. 645, 215 S.E. 2d 540 (1975)." *State v. Smith*, 291 N.C. 505, 518, 231 S.E. 2d 663, 672 (1977). *See also State v. Powell*, 297 N.C. 419, 255 S.E. 2d 154 (1979). Absent a showing that consolidation for trial has deprived an accused of a fair trial, the exercise of the court's discretion will not be disturbed on appeal. *State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977); *State v. Fox*, 274 N.C. 277, 163 S.E. 2d 492 (1968). We find no such deprivation of a fair trial here. Consolidation is generally held proper where, as in this case, the offenses charged are of the same class and are so connected in time and place that evidence at trial upon one indictment is competent and admissible on the other. *State v. Smith, supra; State v. Pierce*, 36 N.C. App. 770, 245 S.E. 2d 195 (1978). Defendants have shown no abuse of discretion in the trial judge's allowing the State's motion for consolidation and denying defendants' motion to sever. This assignment of error has no merit.

Defendants' eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, and eighteenth assignments of error, based on 31 exceptions noted in the record, relate to the admission and exclusion of testimony. Suffice it to say we have carefully examined the excep-

tions upon which these assignments of error are based, and we find that defendants were not deprived of a fair trial by any of the rulings challenged by these exceptions.

**[3]** Next, defendants contend the trial judge erred in "responding with the Allen Charge instructions to the jury following the statement of the jury foreperson that there were some members of the jury that believed that they had insufficient evidence and were unable to make the decision upon the cases." After the jury had deliberated for one hour and ten minutes, it returned to the courtroom at 5:20 p.m. and announced that "some members of the jury . . . feel, that believe that we have had insufficient evidence and we're unable to make a decision." The foreperson stated: "We have deliberated. I don't know whether to deliberate further or not. We were hoping you'd come back to the room, that we could ask you questions there. Would that be possible?" At that point, the trial judge decided to recess court until the next day. Upon the convening of court the next morning, the following occurred:

> THE COURT: If the foreperson would stand again, please. Was there any specific instructions that you wanted me to repeat or give to the jury this morning?
>
> FOREPERSON: Okay, sir, if you would redefine for us reasonable doubt and acting in concert.

The trial judge responded to this request, and one further question, and then stated:

> I presume that you members of the jury realize what a disagreement means. It means, of course, that it will be more time of the Court that will have to be consumed in the trial of this action again. I don't want to force you or coerce you in any way to reach a verdict, but it is your duty to try to reconcile your differences and reach a verdict if it can be done without the surrender of one's conscientious convictions.
>
> You've heard the evidence in the case. A mistrial, of course, will mean that more time and another jury will have to be selected to hear the cases and this evidence again.

I realize the fact that there are sometimes reasons why jurors cannot agree. I want to emphasize the fact to you that it is your duty to do whatever you can to reason the matter over together as reasonable men and women and to reconcile your differences if such is possible without surrendering your conscientious convictions and to reach a verdict. I'm going to let you resume your deliberations and see if you can.

The jury retired, and returned twenty-five minutes later with a verdict.

Defendants insist that the trial judge violated G.S. § 15A-1235 and "coerced" the jury to return a verdict by giving the instruction quoted above. Defendants claim that *State v. Lamb*, 44 N.C. App. 251, 261 S.E. 2d 130 (1979), in interpreting G.S. § 15A-1235, condemned an instruction similar to the one challenged here. G.S. § 15A-1235 provides in pertinent part:

  (a)  Before the jury retires for deliberation, the judge must give an instruction which informs the jury that in order to return a verdict, all 12 jurors must agree to a verdict of guilty or not guilty.

  (b)  Before the jury retires for deliberation, the judge may give an instruction which informs the jury that:

      (1)  Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

      (2)  Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

      (3)  In the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

      (4)  No juror should surrender his honest conviction as to the weight or effect of the evidence solely be-

cause of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(c)  If it appears to the judge that the jury has been unable to agree, the judge may require the jury to continue its deliberations and may give or repeat the instructions provided in subsections (a) and (b). . . .

In addressing similar contentions in State v. Hunter, 48 N.C. App. 689, 269 S.E. 2d 736 (filed 16 September 1980), Judge Vaughn, for this Court, wrote:

We do not concede, however, that the legislature intended to require a trial judge, without regard to the circumstances then existing to either recite G.S. 15A-1235(b) every time a jury returns to the courtroom without a verdict or discharge the jury. We believe, instead, that the section should be regarded as providing the guidelines to which Justice Branch (now Chief Justice) referred in State v. Alston, 294 N.C. 577, 596, 243 S.E. 2d 354, 366 (1978), and the trial judge must be allowed to exercise his sound judgment to deal with the myriad different circumstances he encounters at trial. He should, of course, avoid any reference to the potential expense and inconvenience in retrying the case should the jury fail to agree. State v. Easterling [300 N.C. 594, 268 S.E. 2d 800 (filed 15 July 1980)].

48 NC App. at 692, 269 S.E. 2d at 738.

In the case before us, the jury returned to the courtroom after an hour's deliberation, requested additional instructions, and indicated that some of the jurors felt they did not have enough evidence to reach a verdict. Also, the trial judge recessed court until the following morning, and on the following morning he responded to the juror's request for additional instructions and further gave the instruction quoted above. These facts were some of the "different circumstances" encountered by the trial judge requiring him to "exercise his sound judgment." Under these circumstances, we do not believe Judge Kirby was required to recite G.S. § 15A-1235(b), nor do we believe that the "additional instructions" were erroneous, coerced the verdict, or were in any way prejudicial to these

defendants. Furthermore, the fact that the judge adjourned court and did not respond to the juror's questions until the following morning is of no legal significance whatsoever. Finally, unlike *State v. Lamb, supra,* the judge did not mention "inconvenience and expense" in the instruction challenged by these assignments of error, and thus *State v. Lamb, supra,* is distinguishable.

We have examined defendants' other assignments of error and find them to be without merit.

We hold that defendants had a fair trial free from prejudicial error.

No error.

Chief Judge MORRIS and WEBB concur.