COUNTY OF LENOIR, EX REL. ALICE FAYE DUDLEY v. JIMMY LEE
DAWSON

No. 818DC1271

(Filed 21 December 1982)

1. **Bastards § 10— action to establish paternity—reason for denying paternity of another child—irrelevancy**

    In an action to establish paternity and to obtain child support, defendant's testimony that he had denied paternity of another child born to plaintiff because he had "heard some people in the community talking about it to the effect that it was not mine" was irrelevant and properly excluded; furthermore, the exclusion of such testimony was not prejudicial where defendant's reason for denying paternity of the other child was adequately conveyed to the jury prior to the exclusion of such testimony. G.S. 110-135.

2. **Bastards § 10— action to establish paternity—sufficiency of evidence**

    Plaintiff's evidence was sufficient for the jury in an action to establish paternity although the evidence showed that the child was born 289 days after plaintiff testified that she and defendant last had sexual relations and there was no expert medical testimony as to whether the term of plaintiff's pregnancy could have extended beyond ten lunar months, or 280 days.

3. **Trial § 39— failure to reach verdict—dismissal not required—further deliberations**

    The trial court did not err in failing to dismiss the case and in giving the jury further instructions and permitting the jury to deliberate further when the jury returned to the courtroom and reported that "with the evidence presented on both sides, there was no decision made," since the jury's statement did not indicate that it had found plaintiff's evidence to be insufficient.

4. **Trial § 39— inability of jury to reach verdict—further instructions—comment on wasted judicial resources from mistrial**

    It is error for the judge in a civil case to instruct the jury, upon the jury's failure to reach a verdict, that a mistrial will mean that another jury will have to be selected to hear the case again and that it will take another week or more of the court's time to hear the case again. G.S. 15A-1235; G.S. 49-14.

APPEAL by defendant from *Jones, Judge.* Judgment entered 31 March 1981 in District Court, LENOIR County. Heard in the Court of Appeals 15 September 1982.

This action to establish paternity and for child support was brought by Lenoir County (the County) on behalf of Alice Dudley against defendant Jimmy Lee Dawson. The Complaint alleges that Alice Dudley is the mother of an infant child, Teneisha Dudley; that Jimmy Dawson is the biological father of Teneisha; and that Jimmy Dawson has failed to contribute to the child's support despite demands by plaintiff and Alice Dudley and despite the fact that Jimmy Dawson is an able-bodied man capable of contributing to the child's support. Having made payments to Alice Dudley for child support under the AFDC program, the County prays that defendant (i) be adjudicated the father of Teneisha Dudley; (ii) be adjudicated a responsible parent under N.C. Gen. Stat. § 110-135 (1981); and (iii) be ordered to satisfy the debt the County incurred under the AFDC program.

*William D. Spence for defendant appellant.*

*Marcus and Whitley, by Robert E. Whitley, for plaintiff appellee.*

BECTON, Judge.

I

The issues on appeal concern evidentiary matters, denial of defendant's motion for directed verdict, the trial court's use of an "Allen Charge"[1] when the jury indicated that it had not reached a decision, whether the trial court expressed an opinion to the jury during its jury instructions, and the trial court's failure to make a specific finding that defendant was the father of the child before accepting the jury's verdict and entering a judgment requiring defendant to pay child support. We resolve the "Allen Charge" issue in defendant's favor and grant a new trial. Because the evidentiary issues may arise on retrial, we address them also.

II

[1] At trial, Alice Dudley testified that she has three children born out of wedlock, two of whom were fathered by the defend-

---

1. *Allen v. United States,* 164 U.S. 492, 41 L.Ed. 528, 17 S.Ct. 154 (1896).

ant. The second child, Teneisha, is the child whom this appeal concerns. Without objection, Alice Dudley also testified that she took defendant to court to obtain money for the first child, Tonya. To show that he had not arbitrarily denied paternity of the first child, defendant sought to testify that he had "heard some people in the community talking about it to the effect that it was not mine." Defendant first contends that the exclusion of this testimony by the trial court was prejudicial and constitutes reversible error.

Even if defendant did not offer this testimony for the truth of the matter asserted, we are not convinced it is relevant. More important, defendant's reason for denying paternity was adequately conveyed to the jury before the trial court excluded the testimony that is the subject of this assignment of error. Without objection, defendant testified as follows:

> I did have sexual relations with her [Alice Dudley] from 1973 to 1976 until the first child was born, Tonya. She did come and tell me that she was pregnant with Tonya. I told her I would take care of it and later on she carried me to court. I don't know why she took me to court. I was sending the child money mostly every month. I denied the first child was mine the day she took me to court because of her taking me to court. I was already taking care of it and then after she took me to court we had the blood test.
>
> Q. Have you heard something in the community that made you change your mind?
>
> A. That is right.

In view of this explanation concerning defendant's denial of paternity of Tonya, we cannot say that prejudicial error occurred in the exclusion of the proffered testimony.

### III

[2] Because the County's evidence shows (i) that Alice Dudley's last menstrual period prior to the birth of Teneisha was in January of 1978; (ii) that Alice Dudley did not have sex with the defendant after the last of January 1978; and (iii) that the child was born 17 November 1978, some nine calendar months and seventeen days after January 1978, defendant contends that the

trial court erred in denying his motion for a directed verdict made at the close of all the evidence. Although "it is a matter of common knowledge that the term of pregnancy is ten lunar months, or 280 days," *State v. Forte*, 222 N.C. 537, 539, 23 S.E. 2d 842, 844 (1943), we reject defendant's argument that testimony by a qualified medical expert as to whether the term of Alice Dudley's particular pregnancy could have extended beyond 280 days was required. Although the child, Teneisha, was born at least 289 days after the last time Alice Dudley could have become pregnant by the defendant, plaintiff's evidence, in this paternity action, was sufficient to be submitted to the jury.

*Byerly v. Tolbert*, 250 N.C. 27, 108 S.E. 2d 29 (1959), which defendant cites, is distinguishable. The issue in that case was whether a child born approximately 322 days after the death of the intestate was entitled to recover any of the wrongful death proceeds. The *Byerly* Court held that a child born to intestate's widow more than ten (10) lunar months or 280 days after the death of the intestate is presumed not *en ventre sa mere*. This presumption, however, is rebuttable. Expert medical testimony is not needed in the case *sub judice* when the child was born 289 days after the date Alice Dudley testified she and defendant last had sexual relations. Children are often born two weeks late. Defendant's motion for directed verdict was properly denied.

IV

[3] After deliberating for fifty-two minutes, the jury returned to the court room and said: "Your Honor, with the evidence presented on both sides, there was no decision made." Defendant next contends that the trial court should have discharged the jury and dismissed the case rather than to have given an "Allen Charge" since the jury's statement indicated that the County had not proven its case beyond a reasonable doubt, and not that the jury had failed to reach a verdict. We hold that the trial court did not err in failing to discharge the jury and dismiss the case.

First, the jury did not say, unequivocally, that it was unable to reach a verdict. Second, the following issue was submitted to the jury: "Is the defendant, Jimmy Lee Dawson, the father of Teneisha Lashon Dudley, who was born to Alice Faye Dudley on November 17, 1978?" Significantly, the jury did not find plaintiff's evidence insufficient by answering the issue "No." Third, after

the jury made its statement, the trial judge said: "The court understands the foreman of the jury, you have not reached a verdict, is that correct?" The foreman replied: "Yes, sir."

## V

[4]  We must now determine if the trial court's instruction on the failure to reach a verdict coerced the jury. After being advised by the foreman that the jury had not reached a verdict, the trial court gave the following instruction:

COURT: Please listen to me for just one moment. I presume you Ladies and Gentlemen realize that a disagreement means in not reaching a verdict it means of course it will take another week or more time in the Court at some other time to be consumed for the trial of this action again. I don't want to force you or coerce you in any way to reach a verdict but it is your duty to try to reconcile your differences and reach a verdict if it can be done without any surrender of one's conscientious convictions. You have heard the evidence in the case and a mistrial of course will mean that another jury will have to be selected to hear the case and evidence again presented. The Court recognizes the fact that there are sometimes reasons why jurors cannot agree. The Court wants to emphasize the fact that it is your duty to do whatever you can to reason the matter to try and reason the matter over together as reasonable men and women to reconcile your differences if such is possible without the surrender of conscientious convictions and to reach a verdict. I will let you resume your deliberations and see if you can. If you can't you sound your alarm at the deliberation door again and you will be admitted. If you do reach a verdict sound your alarm and you will be admitted back in the courtroom.

Were this a criminal case, the resolution of the issue presented by these instructions would be simple. Our legislature, realizing that the "Allen" or so-called "dynamite" charge has been the subject of much criticism,[2] and considering the standards approved by the American Bar Association,[3] enacted N.C. Gen. Stat.

2. *See* Annot., 41 A.L.R. 3d 1154 (1972) and *State v. Alston*, 294 N.C. 577, 592, 243 S.E. 2d 354, 364 (1978).

3. *See*, American Bar Association Standards Relating To Trial By Jury, § 5.4 (approved draft 1968).

§ 15A-1235 (1978). This statute "represents a choice of the 'weak' charge approved in the ABA standards, as opposed to the 'strong' charge traditionally used in federal courts and the 'even stronger charges authorized under North Carolina case law.'" *State v. Easterling,* 300 N.C. 594, 608, 268 S.E. 2d 800, 809 (1980). Under N.C. Gen. Stat. § 15A-1235, trial judges are prohibited from mentioning or suggesting that wasted jury and judicial resources might occur as a result of mistrials in criminal cases. *State v. Easterling; State v. Alston,* 294 N.C. 577, 243 S.E. 2d 354 (1978); *State v. Lamb,* 44 N.C. App. 251, 261 S.E. 2d 130 (1979), *disc. review denied,* 299 N.C. 739, 267 S.E. 2d 667 (1980).

This is not a criminal case, however. A paternity suit under N.C. Gen. Stat. § 49-14 (1981) is a civil action, even though the "beyond a reasonable doubt" standard is employed. *Bell v. Martin,* 299 N.C. 715, 722, 264 S.E. 2d 101, 106 (1980), *reh'g denied,* 300 N.C. 380 (1980). But the purposes underlying the efforts to mollify the "Allen Charge" seem equally applicable in criminal and civil cases. The "Allen Charge" is filled with psychological pressures designed to pressure deadlocked juries to reach a verdict. And, as we said in *State v. Lamb,* "this potentially coercive device has been rebounding through the *civil* and criminal justice systems for over eighty years." (Emphasis added.) 44 N.C. App. at 253, 261 S.E. 2d at 131 (1979). To charge a jury, in civil or in criminal cases, that failure to reach a verdict will mean another week or more of the court's time for the retrial of this case, and that a mistrial will mean that another jury will have to be selected to hear the case and evidence again, is "legally inaccurate and simply not true as any trial lawyer knows." *State v. Lamb,* 44 N.C. App. at 254, 261 S.E. 2d at 132.

Interestingly enough, N.C.P.I. — Civil, 150.50 "Failure of Jury to Reach Verdict" (replacement October 1980), which was being used at the time of this trial, takes the conservative approach and follows *State v. Lamb* and G.S. § 15A-1235. Those instructions do not mention that a mistrial will probably necessitate the selection of another jury to rehear the case and evidence or that more time of the court will be spent on the retrial of the case.

Considering then, (1) the efforts to mollify the effect of the "Allen Charge" in North Carolina; (2) the purposes underlying G.S. § 15A-1235; and (3) the potentially coercive impact of the instructions in this case as they urge the jury to consider ex-

traneous and improper matters and as they inaccurately state the law, we hold the challenged instructions to be error. No jury, civil or criminal, should be given instructions that effectively coerce a verdict. For the foregoing reasons, defendant is entitled to a

New trial.

Chief Judge MORRIS and Judge JOHNSON concur.